## KORNFELD
v.
### UNITED STATES et al.
Civ. A. No. 11807.

United States District Court
E. D. New York.
April 8, 1954.

Harry A. Kornfeld, Brooklyn, N. Y., for plaintiff.

Leonard P. Moore, U. S. Atty., E. Dist., New York, Brooklyn, N. Y., for defendant United States. Arthur D. Hickerson, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Thomas H. Bivin, New York City, for defendant Leroy Field, Jr., William H. Morris, New York City, of counsel.

BRUCHHAUSEN, District Judge.

This action was tried before the Court, without a jury. The plaintiff, Max Kornfeld, sued the defendants, United States of America and Leroy Field, Jr., for damages for personal injuries.

The proof established that the plaintiff was a passenger in a Plymouth automobile operated by his son-in-law, Nicholas Pappacoda (hereinafter referred to as "Pappacoda") on December 22, 1950; that the plaintiff and Pappacoda arrived at the Shore Road Hospital at about 7 p. m.; that Pappacoda parked his Plymouth automobile alongside the easterly curb of Shore Road, facing in a northerly direction between 91st and 90th Streets; that after visiting at the hospital, plaintiff and Pappacoda returned to the automobile and found a note inserted under the windshield wiper to the effect that the defendant, Leroy Field, Jr. (hereinafter referred to as defendant Field) had struck the Plymouth automobile belonging to Pappacoda; that they also found the automobile of the defendant Field, a Ford passenger car, standing in the rear of Pappacoda's Plymouth automobile; that the plaintiff sustained personal injuries when an Army truck, owned by defendant United States of America, subsequently skidded down the hill upon which defendant Field had previously skidded, and pinned plaintiff between the cars owned by defendant Field and Pappacoda.

The plaintiff, in response to Pappacoda's request, entered the space between Pappacoda's car and defendant Field's car for the purpose of pulling the bent rear left fender of his (Pappacoda's) car away from the tire itself, so as to move the car. Thereupon the Army truck struck the rear of defendant Field's car, pinning the plaintiff against Pappacoda's automobile.

To ascertain whether there was negligence on the part of either or both of the defendants, it becomes necessary to review the occurrences leading up to the accident.

The Army truck was driven by a member of the Armed Services of the United States. He testified that he was assigned to transport furniture in the truck from Brooklyn to Fort Wadsworth. Although the roads traversed by the Army truck before its entry upon Shore Road were not identified, the testimony established that the Army truck was actually on Shore Road for a few blocks before reaching the scene of the accident. There is no evidence that the general weather conditions were bad or that there was ice throughout the city, or in the general vicinity of the accident. There is evidence that there was merely a trace of precipitation on that day, and that the temperature hovered around 31° or 32°. Although there was conflicting testimony respecting the condition of the hill (or incline), there is no doubt there was some ice upon it. It matters little whether it was an unbroken sheet of ice, or large patches of ice with areas of concrete between them. A police officer testified that there were two or three accidents in the period of an hour or so. A three-quarter ton Army truck, loaded with furniture, sliding down a hill, has sufficient momentum, traveling at approximately twenty miles per hour before skidding, to carry it from one patch of ice to another across intervening areas of concrete. The credible evidence is that the slope was a sheet of ice, or covered with large

patches of ice, either of which condition could cause the happening. The conduct of the operator of the Army vehicle must be examined in light of these conditions.

■ The Army truck was traveling at approximately twenty miles per hour. The operator thereof shifted into second gear as he approached the southerly slope of the hill. As he reached the crest of the hill, he saw the vehicles below, one of which (the car of defendant Field) was protruding into his particular lane of travel. He also saw the beginning of the ice formation just ahead of him, indeed practically under him, and he applied the brakes. It is his actions at this time, when he saw signs of danger some one hundred feet or less ahead of him, that is claimed to constitute negligence. Since this Court finds that there was no evidence of unsafe conditions upon the road before reaching the crest of the hill, the operator of the Army truck was not bound to anticipate the icy condition of the slope on the other side of the incline. Thus, we find the Army vehicle suddenly on top of an icy hill, either at the time its operator applied the brakes, or immediately thereafter. The mere fact that he applied the brakes when the truck was on the icy roadway is not in and of itself negligence. There was no duty to do something impossible, viz.: to bring the car to an instantaneous halt. There is no evidence of either excessive speed, or negligent driving. The fact that a car, preceding the Army truck, managed to glide past the danger zone at the foot of the hill did not obligate the driver of the Army vehicle to take the same course, and to exercise his discretion in a like manner. The application of the brakes on the Army truck under these circumstances did not amount to a breach of duty on the part of its operator. The cases of Smith v. Levison, 222 App.Div. 310, 226 N.Y.S. 311, and Thomas v. Worth, Sup.App.T., 10 N.Y.S.2d 489, and other cases cited therein, render ample support of the exculpation of the defendant, United States of America. The Court finds that whatever shifting of furniture may have taken place in the Army vehicle is of no moment in this case. Nor does the skidding of the loaded Army vehicle for a considerable distance after impact indicate excessive speed. The momentum of the truck amply accounts for that occurrence.

■■ The Court finds that the driver of the Army vehicle was traveling at a safe rate of speed and that he attempted to stop his car by the application of the brakes at or about the time he entered the downgrade of the icy slope of the hill. There was no evidence of any negligent act of either omission or commission on his part, but rather, a complete exercise of reasonable care. That a more skillful driver may have chosen a different course, assuming that there was one, is not the test of negligence.

■ The defendant Field's actions, all of which took place within a very short span of time, should be carefully scrutinized. As previously stated, defendant Field's automobile also skidded down the hill and struck the rear of Pappacoda's car. This Court was impressed with the credibility, bearing and demeanor of defendant Field. Although there was no testimony that defendant Field left his parking lights on, there was no testimony to the contrary, but only that the lights were not noticed. The Court believes defendant Field's statement that he turned on his parking lights after he struck Pappacoda's car. In any event, the driver of the Army vehicle was fully aware and could clearly see the cars at the foot of the hill. The testimony is that Field's car skidded and struck Pappacoda's car in the same manner as did the Army truck. The Court does not believe there was any excessive speed on Field's part. His car, too, contacted the ice on the roadway as it came over the crest of the hill. After his car struck Pappacoda's car, he (defendant Field) attached a note to its windshield, to identify himself. Plaintiff and Pappacoda then came upon the

scene and proceeded to attempt to pull the fender away from the wheel of Pappacoda's car so as to move it forward. Defendant Field then attempted to repair his car, since the fan blade was striking the motor as it turned over. It was then that defendant Field observed the Army truck skidding down the hill. He pulled the infant passengers traveling in his car—and now near the standing autos—to a place of safety. It was then that the Army truck pinned plaintiff between the two cars by striking the rear of defendant Field's car.

It is claimed that defendant Field was negligent in not immediately moving his car or that portion of it which was blocking the Army truck's lane of travel, and that he did not immediately proceed to the top of the hill in order to warn oncoming drivers of the danger below. Although Field's car did obstruct a portion of the lane, there was still ample room on this wide street, Shore Road, indeed a full lane, open for passing. Thus, the Court considers what defendant Field did toward completely clearing the path of travel. Even assuming the car could be moved, it could not be moved forward, since plaintiff and Pappacoda were trying to free the fender from the wheel in their car so that they themselves could move their car forward. It is not likely that Field could move his car to the rear up an icy hill. If he attempted to do just that it is not impossible that it might have glided sideways further into the lane of travel. A feeding of gas to an engine on an icy incline while in reverse may result in a direction other than the one intended. Cf. Books v. Goldstein, 160 Misc. 488, 289 N.Y.S. 1087.

There is no requirement in the State that an operator of a car under these circumstances must first ascertain whether his car is absolutely disabled before deciding what to do. Upon hearing what he believed was the fan blade smashing up against the motor, Field immediately set about fixing it so he could, in that manner, remove his car from the scene. Plaintiff attempted to free Pappacoda's car, so it could also be moved. Defendant Field breached no duty. Assuming, arguendo, that defendant Field did attempt to move his car, and an explosion, or some other physical occurrence resulted which caused plaintiff injuries, would defendant Field be liable when he was on notice of an apparent defect in his car? One measures the duty under the facts. Defendant Field acted with all prudence to remove his car. He did not, as did the driver in Axelrod v. Krupinski, 302 N.Y. 367, 98 N.E.2d 561, leave a disabled car for some twenty or thirty minutes on an express highway in order to telephone for help, but remained at the scene to relieve the situation in a manner which may have been chosen by any reasonable man under those circumstances. The Court of Appeals held in Axelrod v. Krupinski, supra, that where a car with engine trouble was parked on an express highway in the face of constant traffic and the driver left the scene for some twenty or thirty minutes to telephone for help, and no provision was made to have the adult occupants warn oncoming motorists, the question of negligence should have been left to the jury. That case is not authority for plaintiff in this case, but merely points up the question of fact to be determined. The facts in the case at bar are such that defendant Field had every right to choose what appeared to be the quickest course of clearing the road, to repair the car himself. He had no adult occupants to assist him or warn others, but only two infants to protect. Testimony reveals that there was room for another car to pass, and in the light of the circumstances, defendant Field's attempt to get his car ready to move forward after Pappacoda's car was free, was, indeed, the prudent thing to do. To attempt to back up an icy hill would be unintelligent. Hindsight cannot say that such a procedure would have been successful, nor can it retroactively transform prudence into negligence. The Court believes that the chance of moving the car, after some

quick repair work by the defendant Field, justified his attempts to relieve the situation. The traffic was not so dense as to require a choice of warning activities on the part of Field as compared to attempts of repair.

It is true that this is an area in which reasonable men may disagree as to the application of the tests as set forth in Stanton v. Clegg, 278 App.Div. 486, 106 N.Y.S.2d 178, 183, 184, but this Court concludes that there was no negligence on the part of either defendant. Accordingly, judgment is granted in favor of both defendants. This decision constitutes the findings of fact and conclusions of law.