**Ruth EASTMAN, Appellant,**

v.

**Lenore BRACKMAN, Respondent.**

No. 47296.

Supreme Court of Missouri,

En Banc.

June 12, 1961.

Donald S. Hilleary and Harry L. Hilleary, Jr., St. Louis, for appellant.

Fred B. Whalen, Whalen, O'Connor & Grauel, St. Louis, for respondent.

STORCKMAN, Judge.

The plaintiff, Ruth Eastman, sued Antonio Giacoletto, Walter D. Lampe, and Leonore Brackman to recover damages in the sum of $25,000 for personal injuries alleged to have been sustained by reason of a collision of motor vehicles. At the close of the plaintiff's case, the court sustained the motion of the defendant Lampe for a directed verdict. Near the close of the case, the plaintiff dismissed her cause of action against the defendant Giacoletto with prejudice. The evidence showed that the dismissal was the result of the payment of $3,000 to the plaintiff by the defendant Giacoletto for a limited or restricted release. The case was submitted to the jury against the defendant Lenore Brackman alone and a verdict was rendered in her favor and against the plaintiff.

The plaintiff has appealed and assigns error in two instructions given on behalf of the defendant. The defendant Brackman, the only respondent here, contends that the instructions are not erroneous and further asserts that the trial court erred in overruling defendant's motion for a directed verdict for the reason that the plaintiff did not make a submissible case as to the defendant Brackman. First we will determine the sufficiency of the evidence.

The defendant, Lenore Brackman, lived on Kuettemann Lane, a gravel road running north from Parker Road, an east and west highway in St. Louis County. With regard

to the portion of Parker Road involved in this case, an eastbound motorist proceeds up a slight grade to the crown of a hill and then downgrade 220 feet to the west edge of Kuettmann Lane and then on a fairly level surface for 200 or more feet before another upgrade is encountered. According to the plat and profile drawing, plaintiff's Exhibit A, and testimony of plaintiff's witness, John William Bland, the declivity to the east of the crest of the hill is 1.36 feet at 50 feet; 3.23 feet at 100 feet; 5.38 feet at 150 feet; and 8.3 feet at 200 feet. The highway is about 20 feet wide and surfaced with black-top. Its center line is about three inches higher than the north and south edges of the pavement, and its shoulders are two or three feet wide.

On January 25, 1957, the eastern sides of the hills in this vicinity were ice-covered and slippery. The western slopes being exposed to the direct rays of the sun were generally clear of ice and dry. The casualty occurred on the eastern slope of the hill just west of Kuettemann Lane. Like the others so situated, this slope was covered with ice and slippery beginning approximately at the crown of the hill. West of the crown, the ice had melted and the pavement was dry.

At about 4:30 p. m. on the day in question, the defendant Brackman was driving eastwardly on Parker Road returning home from her work intending to turn north into Kuettemann Lane. As she proceeded slowly down the eastern slope approaching Kuettemann Lane at a speed of about five miles per hour, her automobile skidded on the icy pavement and its right front wheel went onto the south shoulder and into a depression about a foot lower than the pavement. Her car came to rest headed in a southeasterly direction blocking most of the eastbound lane of travel. She tried to back up, but she could not get sufficient traction on the icy pavement to move the car. Shortly thereafter, the plaintiff riding in a truck being operated by her husband, Herbert Eastman, westwardly on Parker Road, came along. Mr. Eastman stopped his truck abreast of the Brackman automobile at which time the entire road was blocked by the two vehicles. After a brief discussion with the defendant Brackman, Mr. Eastman backed up about 100 feet to a point where the pavement was dry in order to attain the impetus necessary to get over the icy hill. In the meantime, the defendant Brackman got skid pads out of the back of her automobile and placed them behind the rear wheels of her automobile. She then got in her automobile and undertook to back out, but one of the pads flipped out permitting the wheel to spin on the ice, and this attempt to move the automobile was unsuccessful.

As the Eastman truck was moving slowly up the hill the second time and was still somewhat east of the Brackman automobile, the defendant Walter Lampe driving his truck eastwardly came over the crest of the hill, skidded on the ice, spun around 180 degrees and went off of the pavement into the ditch on the south side of the road. The Lampe truck came to rest headed west about 100 feet west of the Brackman car with its left wheels off of the pavement on the south side and the right wheels about one foot on the eastbound lane of the road. When Mr. Eastman was again alongside the Brackman automobile, he pointed out to Mrs. Brackman the skid pad which had been whipped out from under her wheel and which she had been unable to locate. Mr. Lampe had come down the hill to the Brackman car, examined its condition, and started back to his truck to see if he could find something that would be of assistance to her. Mrs. Brackman then remembered that she carried a sack of sand in her car for use on icy pavements in order to give greater traction and she proceeded to get the sand from the trunk of her car.

Before she could use it, the defendant Giacoletto, driving his automobile eastwardly as a speed estimated by Mr. Eastman to be 40 to 45 miles per hour in a 30-mile speed zone, came over the crest of the hill and, being unable to stop, skidded down toward the north side of the road and around so that the right rear portion of his car struck

the right front of the Eastman truck, knocking it backwards down the hill a foot or two. The plaintiff was thrown about in the truck and her knee struck the instrument panel. The Giacoletto automobile went off the pavement and into the ditch on the north side and turned over on its side against the bank, but Giacoletto was not injured. Thereafter the defendant Brackman spread some sand on the icy pavement and with the help of the men present pushing and lifting she was able to move her car back on the highway and proceeded on her way. The remainder of the sand was used in extricating the Lampe truck.

The point where the Brackman car slid from the pavement was not fixed definitely but was estimated to be from 150 to 210 feet east of the crown of the hill. Mr. Eastman testified the distance was approximately 186 feet. The automobiles involved were about five feet in height and the trucks about six feet. The eye level of a person seated in one of the automobiles was shown to be about four feet above the surface of the road. Plaintiff's evidence was that an object five feet in height and 200 feet east of the crest of the hill could be seen by a person in the driver's seat of an automobile 125 feet west of the hilltop. In other words, the evidence tended to prove that the top of an automobile at the point where the Brackman car was off the pavement could be seen by a person in an automobile approximately 325 feet west of it.

So far as these two parties are concerned, there is no substantial dispute as to the relevant facts. The plaintiff does not contend that the defendant Brackman was negligent in permitting her car to slide from the pavement and partially block the eastbound lane of traffic. Thus, this is not a case such as Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820, where the obstruction of the street resulted from a negligent act which continued to exist until the plaintiff was injured. The primary question in that case was causation. The plaintiff here submitted her case against the defendant Brackman solely on the theory that Mrs. Brackman was negligent in failing to go to the crest of the hill to warn approaching eastbound automobiles *of danger to passengers in westbound automobiles.*

Plaintiff's photographs and other evidence established that eastbound motorists, such as Giacoletto, could see portions of the Brackman car and the Eastman and Lampe trucks for a distance of 325 feet and that they had at least 125 feet of dry pavement in which to slow down and avoid the accident. While this tended to establish the liability of Giacoletto, it also served to exonerate defendant Brackman in that it minimized the need of her warning eastbound motorists and tended to justify her course of action. The plaintiff cannot escape the proof of the included fact that an additional warning to eastbound motorists was not imperative. Plaintiff's witness Bland testified that the slope of the hill in question was a "good" grade but not a "steep" one. While the grade varied, the average grade for a distance of 200 feet east of the crown was a little over four per cent. The grade west of the crown was even less. The plaintiff's photographs, as well as the defendant's, demonstrate that the road was straight and the crown of the hill was extensive and not sharp. The terrain was such that the range of visibility was reasonably good while it was still daylight, but darkness would soon be upon the defendant which would increase the danger and tend to worsen her predicament.

In her brief the plaintiff asserts that Mrs. Brackman's car was partially blocking the road for a period of "at least five or six minutes" before the collision occurred and that the plaintiff was in danger for "at least two, three or four minutes." The total elapsed time was based on several estimates and may have been as much as ten or twelve minutes. Thus, it is apparent that this is not a case where the obstructing car was on the pavement a considerable period of time and that its owner did nothing to remove it or to warn others of its presence.

By virtue of § 304.015, RSMo 1959, V.A. M.S., all motor vehicles not in motion are required to be placed with their right side as near the right-hand side of the highway as practicable. For this reason, if no other, the defendant had the legal duty not to obstruct the traveled portion of the highway. Smith v. Producers Cold Storage Co., Mo. App., 128 S.W.2d 299, 308 [13]; Brinkley v. United Biscuit Co. of America, 349 Mo. 1227, 164 S.W.2d 325, 335 [15]; Kornfeld v. United States, D.C., 120 F.Supp. 254, 256, 257.

■ The duty of a motorist not to obstruct the traveled portion of the highway necessarily means that, if his automobile does so because of mechanical failure or, as here, icy conditions of the road, he has the duty to remove the automobile as promptly as reasonably possible. As stated in Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299, 308, "it is negligence to allow a motor vehicle to stand on the traveled portion of a highway".

■ It is also true that as a general rule a person has the duty to warn approaching motorists of a hazard he has created on the traveled portion of a highway. Blashfield, Cyclopedia of Automobile Law and Practice, (perm. ed.), § 1202. But there are circumstances, this case being one, in which a motorist cannot do both. Through no fault of her own, Mrs. Brackman was on the horns of a dilemma. Which duty was she to perform first? In Kornfeld v. United States, D.C., 120 F.Supp. 254, 257, substantially the same factual situation was involved. Defendant Field's automobile slid on the ice and struck Pappacoda's parked automobile. The two were entangled so they could not be readily moved and they blocked part of the highway. An Army truck then came over the crest of a nearby hill, slid on the ice and crashed into the Field car injuring Kornfeld who was between the Field car and the Pappacoda car trying to free them. It was contended by Kornfeld in his suit against Field and the United States that "Field was negligent in not immediately moving his car or that portion of it which was blocking the Army truck's lane of travel, and that he did not immediately proceed to the top of the hill in order to warn oncoming drivers of the danger below." It was held that when Field immediately set about acting with prudence to fix his car so it could be moved from the scene he "breached no duty" and that he "remained at the scene to relieve the situation in a manner which may have been chosen by any reasonable man under those circumstances."

The plaintiff concedes that Mrs. Brackman had the duty to remove her automobile from the traveled portion of the highway, but she says it was a conditional duty depending upon the circumstances. The plaintiff asserts that the defendant Brackman "knew that she was hopelessly bogged down" when she slipped from the pavement, and that she therefore should have abandoned her car and gone to the top of the hill immediately to warn eastbound motorists. During her cross-examination, Mrs. Brackman was asked by counsel for the defendant Giacoletto if she realized immediately that she was "hopelessly bogged down", and she answered in the affirmative. Her other testimony, however, establishes that she knew she needed traction in order to move her car and that she believed she had the means to get it. She had wire mesh skid pads designed to give traction to automobiles on icy surfaces. She got them out of her car, but before she was able to use them Mr. Eastman drove up, stopped and engaged her in conversation. She attempted to use the skid pads before Mr. Lampe came down the hill and offered assistance. Mrs. Brackman then remembered the sack of sand and was getting it from the trunk of her car when the Giacoletto car came over the hill and struck the Eastman truck. While her car was bogged down in the sense that it was "impeded and inactive", her other testimony and her actions demonstrate that she did not consider the situation hopeless.

The plaintiff relies strongly upon Champieux v. Miller, Mo., 255 S.W.2d 794, in

which the essential facts were these. On a dark, rainy night the plaintiff came upon a truck and automobile which had collided. The truck without any lights was completely across the paved portion of the highway and the wrecked automobile with one headlight burning was close to the front end of the truck. The plaintiff was not able to pass safely and stopped within two or three feet of the wrecked automobile. The taillight and headlights on plaintiff's automobile were burning and after she stopped she turned on the dome light inside her car. All vehicles had been in this position for a period of 20 to 30 minutes when another automobile ran into the rear of plaintiff's car. There were flares in good operating condition in the defendant's truck and the defendant truck driver was physically able to use them but did not do so.

The principal issue in the Champieux case was said to be that of proximate cause because it was tacitly conceded by the defendants that the facts in evidence would justify the submission to the jury of an issue as to "whether defendants were negligent in permitting the truck to remain across the highway for a period of 30 minutes without warning or sufficiently warning oncoming motorists of the dangerous situation there existing." 255 S.W.2d 794, 796.

The Champieux case is distinguishable in two principal respects: First, the defendant truck driver had flares which could and should have been used; Mrs. Brackman had no such warning devices and was not required to carry them. General Order 33–C of the Missouri Public Service Commission requires motor vehicles under its jurisdiction to carry signaling devices, but operators of private automobiles are not required to do so. Second, the truck was across the highway for a period of approximately 30 minutes at nighttime,—as opposed to a maximum of 10 or 12 minutes in day-

time during which time Mrs. Brackman was engaged in trying to move her automobile. The Champieux case is not decisive on the facts in the case at bar.

If the defendant Brackman had gone immediately to the top of the hill, had attempted to warn the eastbound motorist (by waving her arms as the plaintiff says she should have), but had failed to stop him, and the plaintiff had been similarly injured, the plaintiff might then have as reasonably contended that the defendant should have first undertaken to move her car in view of the means she had to enable her to do so. Since she did not have warning devices to place on the highway and was not required to carry them, there is no showing that the defendant was not exercising diligence in doing all that could reasonably be expected and required of her in the particular circumstances of this case. Crites v. Kansas City Public Service Co., Mo., 190 S.W.2d 924, 925 [3]; McGuire v. Steel Transport Co., 359 Mo. 1179, 225 S.W.2d 699, 702 [7].

In some factual situations the duty to warn might require a person to abandon his automobile immediately, but such facts are not shown here. The evidence was insufficient to impose a duty on the defendant Brackman to go immediately to the top of the hill for the purpose of warning eastbound motorists for the benefit of the plaintiff.

There are other substantial questions presented including the issue of whether the defendant's instructions were prejudicially erroneous in view of the manner in which plaintiff's verdict-directing instruction was drawn, but our conclusion that a submissible case was not made renders passing on them unnecessary.

The judgment is affirmed.

All concur.