DALE CARLSON, APPELLANT, v. R. T. HANSON, FIRST AND REAL NAME UNKNOWN, APPELLEE.

88 N. W. 2d 140

Filed February 21, 1958. No. 34288.

*William S. Padley,* for appellant.

*Stewart & Stewart,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Dale Carlson, plaintiff, in the district court for Dawson County against R. T. Hanson, first and real name unknown, defendant, to recover damages sustained by the plaintiff to his truck and trailer, the loss of a part of its cargo, and the loss of two tarpaulins, due to the negligence of the defendant's driver in forcing the plaintiff's driver off of the road. The verdict of the jury was returned as a special verdict under the instructions of the court. The court entered judgment on the verdict and dismissed the plaintiff's petition. The plaintiff filed a motion for new trial. Upon the overruling of the motion for new trial, the plaintiff appeals.

For convenience we will refer to the plaintiff's truck as the Carlson truck; to its driver, Dale Jack, as Jack; to the defendant's truck as the Hanson truck; and to its driver, Harry Snowden, as Snowden.

The plaintiff's petition alleged in substance that on October 8, 1955, he was the owner of a 1952 GMC truck with trailer attached which was being operated on a graveled highway 8.6 miles east of Cozad, Nebraska, by Dale Jack, his employee; that Jack was operating said vehicle at a rate of speed not to exceed 40 miles

an hour in a westerly direction at 11:30 p.m., on the date above mentioned; that the defendant's International Diesel semitrailer truck, owned by him and being driven by his employee Harry Snowden, was traveling in an easterly direction at the point as above stated and at the same time; that the road on which the vehicles were traveling was a graveled road; that the county maintenance department of Dawson County had spread a layer of gravel 1 foot deep and 4½ feet wide along the south edge of the road, leaving a space 1 foot wide between the gravel and the south shoulder of the road; that as the trucks approached each other from opposite directions, the truck driven by Snowden was across the layer of gravel on the south side of the road and proceeded forward in an easterly direction prior to the trucks meeting; that at a distance which did not allow the plaintiff's driver, Jack, to stop his truck, the defendant's truck and its driver cut sharply across the gravel strip and onto the left side of the road, forcing the plaintiff's driver to turn off the road to avoid a collision; that as a result, the plaintiff's driver was forced into a borrow pit and plaintiff's truck was overturned; that he lost 278 bushels of corn, was required to spend money to salvage the remainder of the load of corn, lost two tarpaulins, and suffered damage to his truck resulting in the loss of use of the truck for 10 days; and that the defendant, through his employee, was negligent in the following respects: (1) He failed to keep his vehicle under control at all times; (2) he failed to yield half of the traveled portion of the highway; and (3) he failed to keep a lookout for other vehicles on the highway and failed to maintain sufficient control of his vehicle in order that he might stop to avoid collision with other vehicles. The plaintiff prayed for judgment in the amount of $2,542.76.

The defendant's answer admitted the ownership of the vehicles as alleged in the plaintiff's petition; that the defendant's vehicle was being driven in an easterly di-

rection at a point 8.6 miles east of Cozad at the time and place referred to in the plaintiff's petition; and that the defendant's truck was being driven by Harry Snowden, an employee of the defendant. The answer denied all allegations of the plaintiff's petition not admitted, and alleged that the defendant's employee was not involved in any accident with plaintiff's vehicle; that if an accident did occur, the damages referred to in the plaintiff's petition were the direct, sole, and proximate result of the negligence of the plaintiff's employee; and that the defendant's employee exercised due and proper care and caution under the circumstances. The prayer of the answer was that plaintiff's petition be dismissed.

Plaintiff's reply denied all allegations of the defendant's answer not admitted.

The record shows that the plaintiff's truck was a straight truck, the total capacity of the truck and trailer being 20 tons at the time of the accident. There was approximately 40,000 pounds of weight on this vehicle. It was loaded with shelled corn. It was equipped with a 6-ton box on the truck, with a special hitch to haul the trailer and pull the load. The whole vehicle was 46½ feet long and weighed 23,000 to 24,000 pounds. The defendant's truck was a cab-over truck, and a semi-trailer equipped with a livestock rack with a capacity of 5 or 6 tons. The wheel base was 140 inches from the center of the front axle to the center of the rear axle. The tractor and trailer were 49.6 feet long. It was loaded with cattle. It was stipulated that each truck was 8 feet wide. The defendant's vehicle consisted of a 1954 International truck pulling a 1955 Wilson semi-trailer.

A Nebraska safety patrolman testified that he was called to the scene of an accident on October 8, 1955, at 11:35 p.m., on what is known as the "old Highway 30" west of Lexington, Nebraska. When he arrived, he saw a semi-truck parked on the south side of the road a short distance from a bridge. The truck was facing

east. He also saw a second semi-truck on its side in the north borrow pit. The width of the road at the point where the accident occurred was 21 feet. The road was heavily graveled, with a large gravel ridge on the south side of the road. The gravel ridge took up an average of 4½ feet of the main-traveled portion of the road. On the south side of the gravel ridge there was a portion of the crest of the road a foot or a foot and a half wide. The gravel ridge was 4½ feet out from the south side of the roadway, leaving the traveled portion of the road 21 feet minus 4½ feet. The Carlson truck, driven by Jack, started sinking into the soft shoulder of the road 124 feet west of the bridge. From that point this truck traveled 131 feet farther to where it came to rest in the borrow pit on the north side of the road. The Hanson truck, driven by Snowden, was eastbound and appeared to have pulled into the gravel ridge and traveled approximately 100 feet with one wheel on the inside of the gravel ridge. Then it appeared that one of the right dual wheels, he could not say which one, came out of the gravel ridge sharply and then appeared to go back into the gravel ridge and traveled 105 feet farther east in the gravel ridge. The right dual wheel of this truck passed through the gravel ridge. The gravel along this highway was from 6 to 8 inches deep, and the shoulder on the north side of the road was soft. He further testified that he could see where the Hanson truck had pulled into the gravel ridge, had crossed it, and had driven on the south side of it. Prior to that time it appeared that Snowden had been driving the Hanson truck on the north side of the gravel ridge. Snowden told the patrolman that prior to the accident he had been traveling 40 to 45 miles an hour. He was eastbound, and saw the other vehicle coming from the opposite direction. At that time he slowed down and pulled into the gravel ridge. After he had pulled into the gravel ridge, his truck came back out, and he pulled it back into the gravel ridge again and started to stop.

The patrolman further testified that the road was straight in the area of the accident. There was a slight elevation to the west. The weather was clear, the gravel was loose, and the road was dry. The driver of the Carlson truck told this witness that prior to the accident he was driving 50 miles an hour. On re-direct examination this witness testified that the soft shoulder of the road where the Carlson truck started to sink was approximately 6 inches south of the north side of the road.

Dale Jack, the driver of the Carlson truck, testified that on October 8, 1955, he was proceeding west with a load of 40,000 pounds of shelled corn; that there was a bridge; and that he slowed down as he approached it because he thought the truck coming from the opposite direction might meet him on the bridge which was narrow and would not permit two trucks to pass. He further testified that before he reached the bridge he had traveled approximately 4½ miles on this freshly graveled road. He had traveled this road many times and had been over it within 2 weeks before the accident. After he crossed the bridge, he estimated his speed to be 30 to 35 miles an hour. He was unable to tell, because his speedometer was broken. When he crossed the bridge, the Hanson truck was on the right side of the road and, with reference to the strip of gravel on the south side of the road, the Hanson truck was straddling it. Just before the Hanson truck met him it had gone through the gravel ridge, and just as the Carlson truck approached it seemed to this witness that the Hanson truck "just came right out in the road" and there was not room enough for him to proceed between it and the north edge of the road. He further testified that he kept his truck on the soft shoulder of the road a short distance but was not able to pull back over into the road, and went into the ditch. He did not have time, from the time he saw the Hanson truck pull through the gravel, to stop before he would meet it.

He believed he tried to apply his brakes when he was driving, and endeavored to come to a stop.

On cross-examination this witness testified that no part of the Carlson truck touched the Hanson truck, but that it was "Too close for comfort." On re-direct examination he testified that he got the Carlson truck onto the soft shoulder of the road to miss the Hanson truck.

The driver of the Hanson truck testified that as he approached the scene of the accident he did not cross the gravel ridge which varied in depth from a foot to 6 inches and was freshly graveled; that he was driving east at a speed of 40 to 45 miles an hour; that the right front wheels were in the gravel ridge when the Carlson truck passed him; that the Carlson truck and the Hanson truck were at least 2 feet apart when they passed; that he was going about 10 miles an hour when he passed the Carlson truck and there was no contact between the two trucks; that he made no sudden turn to the north nor across the gravel ridge; and that the Carlson truck was approaching fast from the east for the condition of the road. He was unable to estimate the actual speed of the Carlson truck, but testified that it was traveling in the neighborhood of 40 miles an hour. When he passed the Carlson truck he was not on its side of the road, and when he came out of the gravel ridge he was not on the left side of the road.

On cross-examination this witness admitted a statement to the effect that the space north of the gravel was a foot too narrow for trucks to pass and the approaching truck was forced to drive into the ditch. He also testified that he cut back into the gravel on the south side of the road because he knew that the approaching truck needed more room at the speed it was approaching.

Alma Snowden, the wife of Harry Snowden the driver of the Hanson truck, was riding with him on the night of the accident. She testified that she was a truck driver;

that when the two vehicles passed, the Hanson truck was in the gravel ridge; that the Carlson truck looked like it was coming fast; and that when the two vehicles passed, the Carlson truck was on the road and not in the ditch or on the shoulder.

There were also witnesses who testified with reference to the damage to the plaintiff's truck, the loss of the cargo and the two tarpaulins, and the amount of such damage.

The plaintiff assigns as error that the court erred in submitting the question of contributory negligence for the reason that there was not sufficient evidence adduced to warrant the submission to the jury of this issue; that the court erred in giving instruction No. 8 with reference to speed, for the reason that there was no evidence to sustain the defendant's contention that speed was an element in the case; that the court erred in giving instruction No. 13; that the court erred in confusing the jury by the giving of instructions Nos. 3, 4, and 15 with reference to the degrees of negligence; and that the court erred in dismissing the petition of the plaintiff after the verdict of the jury.

With reference to the plaintiff's contention that the evidence was insufficient to submit the issue of contributory negligence to the jury, the plaintiff asserts that the only evidence adduced on behalf of the defendant relating to the charge of contributory negligence on the part of the plaintiff was that the plaintiff's driver was driving too fast. The record discloses that the plaintiff's driver was aware of the condition of this road, that it was being graveled, and that the gravel was loose for a distance of 4½ miles prior to the time that he arrived at the narrow bridge. The plaintiff's driver had been over this road on occasions within at least 2 weeks previous to the time of the accident. He knew the condition of the road east of the narrow bridge, and apparently knew the width of the traveled portion of the road to be 16½ feet and the depth of the gravel.

He was traveling at 11:30 at night, and he saw the Hanson truck approaching at a distance.

The law provides that no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. The fact that the speed of a vehicle is lower than the prima facie limits shall not relieve the driver from the duty to decrease speed by reason of the highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care. See § 39-7,108, R. R. S. 1943.

In Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839, this court said: "The provision in section 39-7,108, R. S. Supp., 1949, that 'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing' is the basic speed rule. Other provisions following in the section are specific speed restrictions based on the existence of the fact situation or situations mentioned in the act." See, also, cases cited therein.

There is also evidence in this record that at the time the defendant's truck passed the plaintiff's truck he was not over on the plaintiff's side of the road. There is evidence by the patrolman that he did not find any marks made by the defendant's truck that were north of the south half of the 16½ foot roadway.

We conclude that the evidence was sufficient to submit the issue of contributory negligence on the part of the plaintiff's driver to the jury.

With reference to the plaintiff's contention that the court's instructions were so indefinite as to confuse the jury, this assignment of error relates to instructions Nos. 3, 8, 13, 15, and 4. Instruction No. 4 will be discussed later in the opinion in connection with the verdict.

The plaintiff asserts that his driver was confronted with an immediate and imminent danger that arose as a result of the negligence of defendant's driver and that he was without warning or notice of the danger in time to allow him to do anything except the act that he did. In other words, the plaintiff's driver was confronted with a sudden emergency and therefore he is not chargeable with negligence because the judgment which he used in the emergency might be wrong. Instruction No. 12 given by the trial court adequately covers the rule relating to a sudden emergency. The plaintiff offers no criticism of this instruction, therefore it needs no further comment.

The plaintiff asserts that there was no evidence to indicate that his driver did not at all times yield one-half of the right-of-way, nor was there any evidence that he failed to keep a proper lookout. In this connection, the plaintiff refers to instruction No. 8 and quotes part of it.

Before setting forth instruction No. 8, we believe instruction No. 7 should be considered in connection with instruction No. 8.

In instruction No. 7, the court instructed with reference to drivers of vehicles proceeding in opposite directions and their duties toward each other in such situation, and also on the statute relating to speed, to the effect that no person shall operate a motor vehicle at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road.

In Krepcik v. Interstate Transit Lines, *supra*, we said that sections 39-746 and 39-748, R. S. 1943, now R. R. S. 1943, should be construed together. Section 39-746, R. R. S. 1943, refers to the "right half of the highway." As that term is used in said section it means the right half of the main-traveled portion of the highway available for traffic. Section 39-748, R. R. S. 1943, provides that drivers of vehicles proceeding in opposite directions

shall pass each other to the right, each giving to the other at least one-half of the main-traveled portion of the roadway as nearly as possible.

Instruction No. 8 provided as follows: "Reference has previously been made to the statute relating to operation on the right half of the road. The main traveled portion of the road is the part available for and used in the movement of traffic in both directions at the time. When roads are undergoing maintenance, it is necessary for each driver to consider the effect of such maintenance upon the operation of not only his own vehicle but also the particular approaching vehicles. Each driver should use the judgment of a reasonable, prudent man to determine the half-way point of the main traveled portion of the road and to yield his left half as nearly as possible to approaching driver. You will consider this duty of each driver in determining whether he exercised reasonable care in keeping a proper lookout, exercising proper control and driving at a reasonable speed. If the evidence shows that defendant's driver did not use reasonable care to determine and to yield one-half of the main traveled portion of the road as nearly as possible, you may find him negligent in that way. If the evidence is evenly balanced or preponderates to show that he did use reasonable care in such determination and yielding, you will not find him negligent in that way."

We believe that under the evidence as heretofore set out instructions Nos. 7 and 8 were proper, and that the plaintiff's objection thereto is without merit.

The plaintiff also objects to instruction No. 13. This instruction is as follows: "The occurrence of damage to a vehicle furnishes no evidence of negligence. You will make your findings as to each driver according to the evidence relating to the amount of care exercised by each. The law does not allow recovery for damage unless the jury finds from the evidence that the damage was caused by negligence."

The plaintiff asserts that the evidence of damage to his vehicle and the manner in which it occurred tends to dispel any claim of contributory negligence. The occurrence of damage to a vehicle does not furnish evidence of negligence of the respective drivers of the vehicles involved.

The court in instruction No. 3 properly defined "reasonable care," "negligence," "slight negligence," "gross negligence," and "proximate cause."

Instruction No. 15 made reference to the special findings, that is, if Nos. 1, 2, 3, and 4, contained in instruction No. 4, were answered in the affirmative, then the jury would proceed to compare the negligence of each driver with the negligence of the other, determining the degree thereof according to the definitions of "slight negligence" and "gross negligence" in instruction No. 3. The instruction then said: "In determining a degree of negligence, you should consider the danger which should have been observed by the driver, his intention or desire to avoid such danger, the lack of care shown by his negligence and the extent to which his negligent acts or omissions contributed to the proximate cause. As to defendant's driver, you will determine and state in Special Finding 5-A, whether his negligence was gross or less than gross. As to the plaintiff's driver, you will determine and state in Special Finding 5-B whether his negligence was slight or more than slight." There is other matter contained in this instruction that is not relevant to the issue here involved and need not be stated.

In considering instructions Nos. 4 and 15 together, it is apparent that all the jury was required to find under these instructions was the degree of negligence of the plaintiff's driver and of the defendant's driver. This the jury did by rendering a special verdict finding that the negligence of the defendant's driver was less than gross and the negligence of the plaintiff's driver was more than slight.

"Instructions are to be considered together, to the end that they may be properly understood, and, if as a whole they fairly state the law applicable to the evidence when so construed, error cannot be predicated on the giving thereof." Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293.

We find the plaintiff's contention to be without merit.

As heretofore pointed out, the plaintiff objects to instruction No. 4 on the ground that when the special findings themselves are inconsistent then judgment on the general verdict is proper. The jury was told in instruction No. 4 that its determination of the facts in issue in this case would be shown by its answers to special findings. The special findings in this instruction are the same as appear in the special verdict except that the questions, of course, were not answered until the jury returned its verdict.

The verdict was a special verdict and it was rendered in accordance with instruction No. 4 which set forth the findings for the consideration of the jury in rendering its verdict. The verdict rendered by the jury was as follows: "SPECIAL FINDINGS: 1. Was the defendant's driver negligent at the time of or immediately before the overturning of plaintiff's vehicle in any one or more of the ways stated in Issue No. 1, Instruction No. 5? Answer yes or no." The ways set forth in issue No. 1 of instruction No. 5 are as follows: "a. In negligently failing to keep a proper lookout for other vehicles. b. In negligently failing to yield one-half of the traveled portion of the highway, as nearly as possible. c. In negligently failing to exercise proper control over the operation of his vehicle." The answer in the verdict was "Yes."

Special finding No. 2 stated: "Was such negligence a part of the proximate cause of the overturning of the plaintiff's vehicle? Answer yes or no." The answer was "Yes."

Special finding No. 3 stated: "Was plaintiff's driver

negligent at the time of or immediately before the overturning of plaintiff's vehicle in any one or more of the ways stated in Issue No. 3, Instruction No. 6? Answer yes or no." The ways stated in issue No. 3 of instruction No. 6 were as follows: "a. In negligently driving at an excessive rate of speed. b. In negligently failing to keep his vehicle under proper control." The answer in the verdict was "Yes."

Special finding No. 4 stated: "Was such negligence a part of the proximate cause of the overturning of plaintiff's vehicle? Answer yes or no." The answer was "Yes."

Special finding No. 5 stated: "(To be answered only if Special Findings 1, 2, 3 and 4 have all been answered 'Yes.') What degree of negligence do you find as to each driver by comparison: A. Defendant's driver? (Check one.) (1) Gross (2) Less than gross." The answer was "Yes" to "Less than gross." "B. Plaintiff's driver? (Check one) (1) Slight (2) More than slight." The answer was "Yes" to "More than slight."

Section 25-1120, R. R. S. 1943, provides: "When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

Section 25-1121, R. R. S. 1943, provides in part: "In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict, in writing, upon all or any of the issues; and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon."

Section 25-1122, R. R. S. 1943, provides: "The verdict of a jury is either general or special. A general verdict is that by which they pronounce, generally, upon all or any of the issues either in favor of the plaintiff or defendant. A special verdict is that by which the jury

finds the facts only. It must present the facts as established by the evidence, and not the evidence to prove them; and they must be so presented that nothing remains to the court but to draw from them conclusions of law."

Within the contemplation of the above-cited statutes, the verdict rendered in this case was a special verdict.

Section 25-1151, R. R. S. 1943, provides: "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury." The court gave a proper instruction in accordance with this statute.

In the instant case the jury found by a special verdict that the negligence of the defendant was less than gross and the negligence of the plaintiff was more than slight in comparison. We find no prejudicial error in the record and conclude the judgment of the trial court dismissing the plaintiff's petition to be proper.

In view of our holding, we deem it unnecessary to discuss other assignments of error.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.