**Marion BUNCH, Plaintiff-Respondent,**

v.

**Liman Odell CRADER, Defendant-Appellant.**

No. 8205.

Springfield Court of Appeals.

Missouri.

July 19, 1963.

Green & Green, H. D. Green, West Plains, for defendant-appellant.

Esco V. Kell, West Plains, for plaintiff-respondent.

RUARK, Presiding Judge.

The occasion: a collision between plaintiff's pickup truck and defendant's automobile on the curve of a snowy country road. The appeal: from a judgment on general verdict for $1800 in favor of the plaintiff.

Appellant's first complaint is in reference to the voir dire examination. Prior to inquiry counsel exchanged the customary information as to liability insurers. Defendant's insurer was the M. F. A. Mutual Insurance Company. Upon first inquiry several members of the jury panel raised their hands to indicate they were policyholders in the M. F. A. Mutual Insurance Company. Then the following:

Mr. Kell: "Would the fact that you are policyholders in the M. F. A. Insur-

ance Company cause you to be biased and prejudiced and prevent you from rendering a fair and—"

Mr. Green: "If the Court please, we object to that question and ask that it be stricken because it is highly prejudicial."

This objection was renewed outside the presence of the jury and overruled. However, plaintiff's counsel did not further pursue that inquiry. His next question was:

"Are any of you or any members of your family employees of the M. F. A. Insurance Company?"

Juror Felty: "I am an agent."

Mr. Kell: "Do you know anything about this accident in any way?"

Juror Felty: "No."

Mr. Kell: "You are one of the adjustors?"

Mr. Green: "We object to that and ask the jury to disregard it."

The Court: "Sustained. The jury is instructed to disregard that question; it is a Court matter, not one for you folks, and I ask you to disregard that. There will not be a mistrial declared. I ask you to carefully weigh your questions before you ask them, Mr. Kell."

Mr. Kell: "Does Mr. Carr work out of your office, Mr. Felty?"

Juror Felty: "Well, he is in and out. His office is next to me."

Mr. Kell: "And has he ever discussed this case in any way?"

Juror Felty: "No."

Mr. Kell: "—told you any facts about it?"

Mr. Green: "Your Honor,—"

The Court: "He said he didn't."

Mr. Green: "—again, I ask that the jury be discharged because these remarks are highly prejudicial to the rights of the defendant."

The Court: "Overruled."

Appellant's counsel contends that the action of the trial court was prejudicial in permitting too much emphasis on "insurance." With the frankness and forthrightness which we have learned to expect from him, he confesses that he has found no appellate decision which sustains his theory. But he states that the practice of the appellate courts in condoning acts of counsel "in revealing insurance coverage through * * * innuendo," on voir dire is "fallacious and ridiculous" (and hypocritical?), and he states that he makes this contention "mid glorious hopes and dreadful fears."

■ It is so well settled as not to require statement of supporting authority that a litigant has a right to know which members of the jury panel are, or might be, interested in the result or outcome of his lawsuit; and a plaintiff has the right to ascertain whether any of the jury members are connected with an insurance company which has an interest in the litigation.[1] We have come a long way since the condition of affairs mentioned in Chambers v. Kennedy, Mo., 274 S.W. 726, to the effect that it was only a remote possibility that a jury panel would contain persons interested in an insurance company. We think that, since The Motor Vehicle Safety Responsibility Law, it is common knowledge that a great majority of the drivers of automobiles carry liability insurance, and therefore the odds are that the average juror is so insured. It is also a fact, which is at least subject to argument, that the average insured juror realizes that claims against liability carriers furnish the pre-

1 Gooch v. Avsco, Inc., Mo., 340 S.W. 2d 665, 667; Dooley v. Dooley, Mo.App., 290 S.W.2d 856; May v. Hexter, Mo. App., 226 S.W.2d 383; Willis v. Buchanan County Quarries Co., 218 Mo.App. 698, 268 S.W. 102; and cases post.

mium basis, and that the greater the losses the higher the premiums.

■ Nevertheless, it is improper to stress or emphasize insurance with the view of conveying to the jury the idea that an insurer, not the defendant, will be the one to pay the judgment.[2] We think, absent special circumstances, the better practice is to ascertain whether any panel member is interested by asking one general question. If there be no affirmative answer to that question, the matter should ordinarily rest there; but, if there be affirmative answers, counsel might possibly need to make further inquiry in order to ascertain the reality or extent of the interest. The inquiry must be in good faith and must be one which develops in a natural manner and without undue emphasis.[3]

■ The trial judge has a sound discretion to exercise in control of the voir dire. It is only where there has been a manifest abuse of that discretion and where there is probability of injury to the defendant that the appellate courts will interfere.[4]

■ In this case it appears to us that there is nothing to indicate bad faith on the part of counsel in making inquiry. It appears also that the learned trial judge kept a tight rein on the conduct of the voir dire and certainly did not abuse his discretion. As to inquiry concerning Mr. Carr (the only one upon which a motion to discharge was based), the record does not show just who he was. He was not called as a witness; but we are of the opinion that the record does not show any probability of prejudice by reason of the inquiry.

The collision occurred on January 27, 1961, in the forenoon at a curve in what is known as the Old Horton Road. This is an unmarked, graded, gravel country road which runs through the timber. The immediate area is "pretty well level." The road runs generally east and west, but there is a "tolerable sharp curve." Presumably a driver going east would approach or enter this curve while traveling in a northeasterly direction. One traveling west would approach or enter the curve in a northwesterly direction. The apex or "sharp" part of the curve is to the north. At this point a woods road comes in from the north and joins the Horton Road. The evidence most favorable to the verdict and judgment is that the width of the Horton Road at the apex of this curve is twenty-one feet. The width of the entrance to the woods road coming in at the north apex of the curve is eighteen feet. There is no ditch on the north side of the Horton Road. On the south, or inside, of the curve is a ditch or bank about a foot high. "You can drive right up against the shoulder of the road." From the description given by the witnesses and from the exhibits, we believe this ditch, bank, or "raised shoulder" can best be described as the type which could have been cut by a road grader blade. A fence was some twelve to thirteen feet south of this ditch or bank. In the space between, the trees had been cut out. Some sprouts or brush had grown up. Just how many and how thick, as an obstruction to sight, was a matter of dispute.[5] There is no very defi-

2. Murphy v. Graves, Mo., 294 S.W.2d 29; Rodenberg v. Nickels, Mo.App., 357 S.W.2d 551, 555; Stewart v. Brune, 8th Cir., 179 F. 350; see Gray v. Williams, Mo. App., 289 S.W.2d 463, 467.

3. Grimm v. Gargis, Mo., 303 S.W.2d 43, 74 A.L.R.2d 599; McCaffery v. St. Louis Public Service Co., 363 Mo. 545, 252 S.W.2d 361; Murphy v. Graves, supra, Mo., 294 S.W.2d 29; Becker v. Koester, Mo.App., 295 S.W. 818.

4. Haley v. Edwards, Mo., 276 S.W.2d 153; May v. Hexter, supra, Mo.App., 226 S.W.2d 383; Barger v. Green, Mo.App., 255 S.W.2d 127; Gray v. Williams, supra, Mo. App., 289 S.W.2d 463; Johnston v. Owings, Mo.App., 254 S.W.2d 993; Schraedel v. St. Louis Public Service Co., Mo.App., 248 S.W.2d 25.

5. In the Ozarks the dead leaves of many of the oaks hang on through the winter.

nite evidence as to sight distance between two vehicles approaching or entering this curve. The only evidence we have as to distance in feet is the defendant's statement that, as he came around the curve, he saw plaintiff when the vehicles were "about forty or sixty feet, possibly a little farther" apart. Defendant said, "I was traveling, I'd estimate, about twenty miles an hour." There is no reason why plaintiff could not have seen defendant at the same time.

It had snowed the previous day, or a day or so before the accident, and there was snow, from two to four inches deep, on the road. As is customary on country roads, a single set of tire tracks or "ruts" had been made along this road. At the curve these tracks or ruts were on the south or inside of the curve. Plaintiff, in his pickup, coming from the west, and defendant, in his automobile coming from the east, were apparently both following the beaten out tracks or ruts. Plaintiff said, "I wasn't driving too fast. I'd just passed Ray Woodring sitting by the side of the road parked." Plaintiff's truck and defendant's car met almost head-on on the inside of the curve on the south side of the road approximately opposite from the entrance to the woods road. Plaintiff's truck was approximately two feet from the ditch or bank on the inside of the curve. Defendant's left fender struck about the center of plaintiff's pickup. Witnesses for plaintiff traced his skidmarks extending backward from his vehicle a distance from "the length of the pickup" to "two or three times the length of his pickup." Skidmarks of the defendant's car "didn't quite extend out from under the back end of his car" or "about three foot of skid mark in the snow."

Plaintiff Bunch testified that he was driving on his south side of the road and that the road was wide enough for three pickups to drive on. He said he was watching the road ahead; that he had no warning

that defendant's car was on the curve until he saw it. He guessed he could see defendant as soon as defendant could see him. He put on his brakes immediately and the collision "happened mighten-nigh instantly; didn't more than see him until, it looked like, he struck me right near the center." He didn't have time to sound his horn. Defendant testified that there was a single set of tracks and the rest of the road was crusted ice and snow "that made it almost impossible to travel." On the other hand, plaintiff's witness testified that the ruts or tracks were slick, but, as to the rest of the road, "I don't want to say it was slick; there was gravel underneath it." It does appear that other vehicles which came afterwards, and while the two vehicles were sitting where they had collided, did drive around on the north side of the road.

Plaintiff's verdict-directing instruction submitted four grounds of negligence in *the disjunctive*, viz., (1) failure to keep a lookout, (2) failure to stop, swerve, or slacken speed, (3) driving on the south half or wrong side of the road, (4) failure to give signal or warning.

Appellant's Point II is that the court erred in giving such instruction, not because of improper hypothesis, but because all of the grounds of negligence were not supported by the evidence. The only cases cited to support this proposition are those holding that where the grounds of negligence are submitted in the disjunctive there must be evidence to support each such ground. With that statement we agree.[6] Appellant's Point III complains of error in refusing defendant's verdict-directing instruction because the plaintiff had committed every act charged against defendant and, if such acts were negligence, then plaintiff was also contributorily negligent. No cases are cited to sustain this contention. Appellant's Point IV is based on the contention that there

6. Gregorc v. Londoff Cocktail Lounge, Inc., Mo., 314 S.W.2d 704(2); Green v. Guynes, Mo., 235 S.W.2d 298(15); Lyons v. Taylor, Mo.App., 333 S.W.2d 346, 352.

was only one traveled portion of the highway, i. e., the one set of tracks in the snow, and that under this state of facts defendant was not negligent in traveling in the tracks. We will consider these contentions together.

 As to appellant's theory that defendant was not negligent in traveling in the tire ruts on the south side of the road because the rest of it was hazardous: We are cognizant of the rule that, in determining the rightful place of the motorist upon the road, that part of it which is passable and available for traffic is, depending upon the circumstances of the particular case, to be considered as the road.[7] But we are not convinced that the north side of the road was, as a matter of law, impassable or unavailable for traffic. The defendant offered and the court gave on his behalf an instruction (No. A) hypothesizing and submitting his contention that the road, except for the "rut traveled portion" was hazardous and unsafe. Whether he was entitled to such instruction it is unnecessary to decide. The fact remains that he submitted this contention to the jury and the jury was evidently not impressed by it. Taken in its most favorable aspect toward the defendant, it was a jury question. We cannot say as a matter of fact or law that the jury was wrong.

 As to the contention that plaintiff could have done anything the defendant could have done to avoid the collision and, therefore, if defendant was negligent, plaintiff was guilty of contributory negligence, the parties did not stand on equal footing. Defendant was on the wrong side of the road and was therefore guilty of negligence. Biggs v. Crosswhite, 240 Mo.App. 1171, 225 S.W.2d 514; Benoist v. Driveaway Co. of Missouri, Mo.App., 122 S.W.2d 86. Plaintiff was on his own right side of the road.

If it be contended he should have yielded, we have the proposition that one on his own right side has the right to assume that an approaching motorist will give way until the circumstances indicate this will not be done. Stanton v. Jones, 332 Mo. 631, 59 S.W.2d 648; Nelms v. Bright, Mo., 299 S.W.2d 483; McGuire v. Steel Transp. Co., 359 Mo. 1179, 225 S.W.2d 699. Even had the plaintiff had time to yield more to his right, his room was limited to two feet since his wheels were within two feet of the bank on the south. Since the cars collided almost head-on, the additional two feet would not have supplied the distance necessary to avoid the collision.

 The only disjunctive in the submission which gives us concern is that which charges defendant with negligence in failing to warn. It is apparent that, after the drivers of the vehicles came in sight of each other, it was too late for a warning to have any effect. Plaintiff said he didn't have time to warn and that the collision happened mighten-nigh instantaneously. The failure to warn *after* the vehicles got within sight distance could not have been a producing or contributing cause, one having a causal connection with the collision. See Steigleder v. Lonsdale, Mo.App., 253 S.W. 487. There remains the question whether defendant had a duty to warn of his approach as he entered or before he entered the curve. We conclude he did have that duty.

 Section 304.016(4), R.S.Mo., V.A.M.S., provides that no vehicle shall at any time be driven on the left side of the road upon a curve where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction. The statutes pertaining to rules of the road do not repeal the common law of negligence. They only set minimal standards of re-

7. Justice v. Malin, Mo., 336 S.W.2d 77; Foster v. Sacco, Mo.App., 343 S.W.2d 171; Green v. Guynes, supra, Mo., 235 S.W.2d 298; Harmon v. Fowler Pack-

ing Co., 129 Mo.App. 715, 108 S.W. 610; Brown v. Southern Paper Products Co., 222 N.C. 626, 24 S.E.2d 334; Carlson v. Hanson, 166 Neb. 96, 88 N.W.2d 140.

quired care. Lafferty v. Wattle, Mo.App., 349 S.W.2d 519, 527. The plaintiff had the right to assume, until he had cause to believe otherwise, that any approacher would be driving on his own right side of the road. Moore v. Fitzpatrick, Mo.App., 31 S.W.2d 590.

The facts most favorable toward the plaintiff are that the defendant was approaching to or upon a curve in the tracks or ruts on his left or wrong side of the road, whereas it was his duty to keep to the outside. Warren v. Giudici, 330 Mo. 483, 50 S.W.2d 634. He was thereby creating a hazard to approaching motorists. He was required to anticipate that another vehicle might approach traveling in the same tracks on its rightful side of the road, and that his own automobile would, to say the least, be a hazard. Blashfield, Cyclopedia of Automobile Law and Practice, § 905; Cox v. Reynolds, Mo.App., 18 S.W.2d 575. He was required to use care commensurate with the circumstances. Blashfield, Cyclopedia of Automobile Law and Practice, § 1025; Phillips v. Stockman, Mo. App., 351 S.W.2d 464; Politte Funeral Home v. Miller, Mo.App., 301 S.W.2d 839. Generally, a person has the duty to warn approaching motorists of a hazard which he has created on the traveled portion of the highway.[8] Had the defendant sounded his horn as he so approached, to or upon the curve, the plaintiff might reasonably have had the opportunity to slow or stop his pickup, or possibly so maneuver his vehicle, as to avoid the collision or at least minimize its force. Perforce, it was a jury question. Peck v. W. F. Williamson Advertising Service in St. Louis, Mo.App., 68 S.W.2d 847. We conclude there was no error in the submission.

Appellant's final contention is that the verdict,

"WE, the jury find the issues for the plaintiff, Marion Bunch, and against the defendant, and assess his damages in the sum of $1800.00. And, we further find the issues for the plaintiff and against the defendant on defendant's Counter-claim.",

was in violation of Rule 71.06, V.A.M.R., since plaintiff had submitted claim on both personal injuries and damage to his motor vehicle. Appellant did not object to the form of verdict when or before it was given to the jury, nor did he object to the verdict after it was returned until he filed motion for new trial four days later.

The giving of a verdict form to the jury is in effect, and is tantamount to, an instruction. Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 320. And, unless the verdict is fatally defective as being actually no verdict,[9] the complaining party must make timely and appropriate objections in order to give the trial court opportunity to correct the infirmity before the jury is released.[10]

There is no contention the verdict was excessive. In this instance plaintiff proved the cost of repair to his truck was "$328.00 and something." We do not detail plaintiff's injuries and subsequent resulting disability, but it plainly appears that the sum of $1800 was well within the amount which could have been allowed for the

8. Blashfield, Cyclopedia of Automobile Law and Practice § 701; Eastman v. Brackman, Mo., 347 S.W.2d 126; Fullington v. Southeastern Motor Truck Lines, Mo.App., 254 S.W.2d 246; Miller v. Wilson, Mo.App., 288 S.W. 997; see Lowry v. Mohn, Mo., 195 S.W.2d 652, 656; Young v. Bacon, Mo.App., 183 S.W. 1079.

9. See Thorne v. Thorne, Mo., 350 S.W.2d 754.

10. Cable v. Metropolitan Life Ins. Co., 233 Mo.App. 1093, 128 S.W.2d 1123, 1127; Brown v. Thomas, Mo.App., 316 S.W.2d 234, 237; Lincoln v. Railway Exp. Agency, Inc., Mo., 359 S.W.2d 759(15); Edmisten v. Dousette, Mo.App., 334 S.W. 2d 746(7); Baker v. Atkins, Mo.App., 258 S.W.2d 16, 23; see Dye v. Loewer, Mo.App., 94 S.W.2d 948(12).

personal injuries alone. It would appear that the error was a defect in form rather than in substance. Mock v. Leggett, Mo. App., 344 S.W.2d 141, 142; Courtney v. Blackwell, 150 Mo. 245, 51 S.W. 668, 676. Rule 83.13, V.A.M.R., provides that there shall be no reversal except for error materially affecting the merits. We believe that under the circumstances of this case it cannot be said that defendant has suffered material prejudice because of the form of the verdict.

The judgment is affirmed.

STONE and HOGAN, JJ., concur.