**Richard BUUS, James Buus, and Gregors Buus, d/b/a Buus Custom Bulldozing, Plaintiffs-Appellants,**

v.

**STOCKER OIL COMPANY, Defendant-Respondent.**

**No. 12319.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 24, 1981.

James L. Bowles, Springfield, for plaintiffs-appellants.

Glenn A. Burkart, Bruce E. Hunt, Mann, Walter, Burkart, Weathers & Walter, Springfield, for defendant-respondent.

FLANIGAN, Judge.

The three plaintiffs, a family partnership doing business as "Buus Custom Bulldozing," sued defendant Stocker Oil Company, a corporation, for damages to, and loss of use of, three pieces of heavy equipment, two "scrapers" and a bulldozer, allegedly caused by defendant's negligence. The jury returned a verdict in favor of plaintiffs in the amount of $86,000. The trial court sustained defendant's motion for new trial. Plaintiffs appeal.

The petition alleged that defendant owned a service station called "Stocker's Service Center" in Mt. Vernon, Missouri, and that defendant "either leased [as lessor] or through an agent operated" Stocker's Service Center; that on November 16, 1979, plaintiffs purchased 270 gallons of fuel at the service center with the belief that it was diesel fuel. According to the petition and plaintiffs' evidence, the fuel was not diesel fuel but was a mixture of diesel fuel and gasoline. Later on the day of the purchase plaintiffs placed the fuel in the two scrapers and the bulldozer. Plaintiffs' trial theory was that by reason of the improper mixture the machines were damaged on that day and were out of use while being repaired.

Plaintiffs' first point is that the trial court erred in granting defendant a new trial on the ground that plaintiffs' verdict-directing instruction, Instruction IV, set out marginally,[1] was not supported by substantial evidence. It is plaintiffs' position that there was no such evidentiary deficiency.

The petition pleaded alternative theories of recovery. Count I was based on breach of contract, Count II was based on breach of warranty and Count III was based on

negligence. Only Count III was submitted to the jury.

■ It is error to give an instruction where there is no substantial evidence to support the issues submitted. *Brassfield v. Sears*, 421 S.W.2d 321, 323 (Mo.1967); *Wired Music, Inc. v. O'Brien*, 556 S.W.2d 459, 462[6] (Mo.App.1977). "The duty to make his case is upon plaintiff and he must remove it from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence." *Farnham v. Boone*, 431 S.W.2d 154, 156 (Mo.1968).

■ In its order the trial court stated that there was no evidence, direct or circumstantial, that "defendant placed gasoline into the diesel fuel bulk tanks of Stocker's Service Center for subsequent sale to customers." This court agrees with that statement.

Defendant offered no evidence. Although plaintiffs' evidence showed that fuel purchased at Stocker's Service Center was a mixture of diesel fuel and gasoline, there was no showing when or by whom the gasoline was introduced into the diesel fuel bulk tanks. There was no showing how many bulk tanks were involved, whether one or more. Indeed there was no showing who operated the Stocker's Service Center and it will be recalled that the petition itself pleaded alternatively that the operation was through defendant's agent or by a lessee of defendant.

Plaintiffs argue, however, that other evidence is sufficient to support the reasonable inference that it was defendant who placed the gasoline into the diesel fuel bulk tanks. This "other evidence" to which plaintiffs refer consists of the following:

1. At 5:30 p. m. on November 16 plaintiff Richard Buus received a telephone call "from Stocker Oil Company" that "I [the

---

1.        "INSTRUCTION NO. IV

Your verdict must be for plaintiffs if you believe:
First, defendant placed gasoline into the diesel fuel bulk tanks of Stocker Service Center for subsequent sale to customers, and

Second, defendant was thereby negligent, and
Third, as a direct result of such negligence plaintiffs sustained damage."

witness] had gasoline in the diesel fuel on the scrapers and the bulldozer and not to run any of the equipment."

2. On November 19 one of defendant's employees, driving a truck "bearing the insignia of Stocker Oil Company" went to the farm where the scrapers and bulldozer were located and removed the gasoline-diesel mixture from them.

3. Also on November 19 defendant replaced a portion of the defective mixture with 67 gallons of "gasoline No. 2" and made no charge therefor.

This court agrees with the trial court that the "other evidence" does not justify the inference that it was defendant who placed the gasoline into the diesel fuel bulk tanks. It is a matter of common knowledge that bulk tanks at service stations are often, perhaps usually, filled by distributors of gasoline and diesel fuel rather than by the station operators themselves. There was no proof that defendant was either a distributor or the operator of the Stocker Service Center. The identity of the person who placed the gasoline in the diesel bulk tanks is a matter of conjecture and the "other evidence" is insufficient to support an inference that it was defendant who did so.

The trial court properly granted a new trial on the issue of liability for the reason that there was no evidence to support a finding that defendant did the act described in Paragraph First of Instruction IV.[2]

■ Defendant argues that in view of the foregoing evidentiary deficiency this court should reverse the order granting a new trial and should remand the case with instruction to enter judgment in favor of defendant. This argument is rejected because the record "does not indicate that all available essential evidence has been fully

presented and that no recovery can be had in any event." *Swope v. Printz*, 468 S.W.2d 34, 41[14] (Mo.1971). On new trial plaintiffs may be able to make a submissible case.

Plaintiffs' second point is that the trial court erred in basing its order, in part, on an alleged error contained in the form of the verdict.

Among the errors assigned in the motion for new trial filed by defendant were "gross excessiveness" of the verdict and submission of an improper verdict form. The trial court, in its order, made no express finding with respect to excessiveness but it did find that it "erred and prejudicially so in giving the form of verdict as to assessment of damages as submitted by plaintiff."

The verdict of the jury was contained on a printed form, containing blanks, submitted to them by the trial court at plaintiffs' request. The upper portion of the form contained a blank showing in whose favor the verdict was returned. In that blank the jury inserted the names of the plaintiffs.

The lower portion of the form included the following:

"Note: Complete the following paragraph only if the above finding is in favor of plaintiffs (Richard Buus, James Buus and Gregors Buus, d/b/a Buus Custom Bulldozing).

We, the undersigned jurors, assess the damages of plaintiffs (Richard Buus, James Buus and Gregors Buus, d/b/a Buus Custom Bulldozing) as follows:

For property damage and loss of use thereof $——— (stating the amount)."

The jury filled in the blank with the amount of the verdict, $86,000, and all jurors signed the verdict form.

**2.** It will be recalled that the grounds based on breach of contract and on breach of warranty were not submitted to the jury and indeed there was no evidence that defendant sold the mixture to plaintiffs.

Plaintiffs introduced sales tickets reflecting the November 16 sale of the mixture to plaintiffs. Defendant's name does not appear on those exhibits. They do contain a stamp reading, "Stocker Service Center" but the printed

portion of each ticket reads, "Bacon Tire Service." There is no evidence that defendant had any connection with "Bacon Tire Service" nor is there any evidence of the persons or entities which operated under that name.

On the other hand the sales ticket of November 19, reflecting the transaction described in the third item of the "other evidence," bore the printed name of defendant.

At no time prior to the discharge of the jury did the defendant make any objection or request concerning the verdict form, either as submitted to the jury or as filled out and returned. In defendant's motion for new trial the complaint is that the court erred "in reading and submitting to the jury [the verdict form] tendered by plaintiffs to the prejudice of defendant in obtaining a fair and impartial trial in that said verdict form by its wording directed the jury to award plaintiffs damages for loss of use if the jury found plaintiffs to have sustained property damage."

The measure of damages instruction submitted on behalf of plaintiffs was Instruction VII which was based upon MAI 4.02 (1977 revision). That instruction deals with "Measure of Damages—Property Only." The "bracketed" portion of MAI 4.02 is to be used where loss of use is pleaded and supported by the evidence and Instruction VII contained that portion.

The trial court, in its order, stated, "The verdict form *required* that the amount of the verdict include *both* property damage and loss of use.... Although Instruction VII gave the jury the *choice* as to whether to add loss of use damages, the verdict form submitted by plaintiffs allowed no such choice. The court therefore prejudicially erred in submitting plaintiffs' form of verdict."

Plaintiffs argue that the verdict form constitutes no ground for the award of a new trial because: (1) it "in all respects complied with the requirements of MAI and the Civil Rules" and (2) even if it was improper, "defendant failed to object to the verdict form in a timely and appropriate manner in order to give the trial court opportunity to correct the alleged defect."

At the time this action was tried, the forms of verdict were found in MAI 36.00, 1980 Supplement, and the following references to MAI are to that supplement of MAI, Second Edition. The notes on use under the various verdict forms found in MAI 36.00 contain this language: "Verdict forms are not instructions and the Court shall not read them to the jury." Although MAI 36.02 (1979 revision) is a verdict form

for use when plaintiff seeks recovery for both personal injury and property damage, MAI 36.00 contains no form of verdict where plaintiff is seeking property damage only or is seeking loss of use in addition to property damage.

Rule 71.06 V.A.M.R. provides, in pertinent part:

"When both damages for personal injuries and damages to property are allowed by the jury, the verdict shall state separately the amount allowed for the aggregate of the items of damage connected with the personal injury and *the amount* allowed for the *aggregate* of the items of damage connected with the injury to the property." (Emphasis added.)

In MAI 36.02 the verdict form reads, in part: "For property damage $_____ (stating the amount or, if none, write the word 'None')."

In light of the foregoing it is at least arguable that the words "and loss of use thereof" should have been deleted from the sentence in the verdict form containing the blank in which the jury inserted the amount of the verdict. Under the circumstances here, however, this court does not reach the merits of such an argument.

Several Missouri cases have dealt with the question of whether an objection to the form of a verdict came too late when it was asserted for the first time in the motion for new trial. They include *Jenkins v. McShane*, 539 S.W.2d 752 (Mo.App.1976); *Scott v. Allstate Ins. Co.*, 537 S.W.2d 838 (Mo.App.1976); *Cobb v. Cosby*, 416 S.W.2d 222 (Mo.App.1967); *Bunch v. Crader*, 369 S.W.2d 768 (Mo.App.1963); see also *Charles v. Ryan*, 618 S.W.2d 220 (Mo.App.1981).

In *Bunch* and in *Cobb* the verdict, contrary to the mandate of Rule 71.06, combined in one amount the awards to the plaintiff for personal injury and property damage. In *Bunch* the court pointed out that the defect was one in form rather than in substance and that it was incumbent upon the complaining party to make a timely and appropriate objection before the jury was discharged in order to give the trial court an opportunity to correct the defect. In *Cobb* the court said that if the defendant

had called the trial judge's attention to the infirmity at the time the verdict was returned, the judge could have returned the jury to its room for further consideration of the verdict. In *Bunch* and in *Cobb* the objection to the verdict, made initially in the motion for new trial, was too late.

In *Scott* the co-plaintiffs were husband and wife. The jury returned a single verdict with respect to the claims of both plaintiffs but denied recovery, so stated the verdict, on the basis of the husband's contributory negligence. That defense, however, was not available to the defendant against the claim of the wife. Distinguishing *Bunch* and *Cobb* on the ground that they involved verdicts which were legally sufficient although defective as to form, the court in *Scott* said the verdict in that case "was determined according to its terms, on a wholly erroneous basis" so far as the plaintiff-wife was concerned, and that the deficiency was not waived by defendant's failure to voice an objection at the time the verdict was returned.

In *Jenkins*, an action on a note calling for interest and attorney's fees, the verdict read: "We the jury find the issues in favor of the plaintiffs and assess their damages at $ *no* principal, and $ *no* interest, and $1,000 attorney's fee, being the total sum of $1,000." The court described the verdict as "impermissible" and as without "proper legal standing whatever." Distinguishing *Bunch* as involving a defect in mere form, the court held the defect was one of substance and that plaintiff's failure to object "during the trial and prior to the filing of their motion for new trial should not and does not foreclose our setting aside the void judgment entered on a legally impermissible and impossible verdict."

■ The rule to be derived from the foregoing four cases is that a complaint concerning a mere technical or formal defect in a verdict must be voiced prior to the discharge of the jury so that corrective steps may be taken; if not then made, the complaint is waived. If, however, the defect is one of substance rendering the verdict a nullity, an objection is timely even if made initially in the motion for new trial.

■ The defect, if such it was, in the instant verdict was one contained in the printed form which was submitted to the jury. That form was available for inspection of counsel before submission. At that time it was incumbent upon counsel to request its correction. The jury itself properly followed the directions contained on the form. After the verdict was returned counsel for defendant made no request that the jury give a breakdown of the $86,000 award. Under these circumstances a complaint with respect to the form of the verdict, asserted initially in the motion for new trial, came too late.

Rule 84.14 V.A.M.R. provides, in part, "No new trial shall be ordered as to issues in which no error appears." "When the trial court has sustained the motion for new trial, the appellate court is more liberal in upholding its action than when the trial court has denied relief." *Cook v. Cox*, 478 S.W.2d 678, 682[7] (Mo.1972). Should the new trial be limited to the issue of liability? For the reasons which follow the court declines to do so.

Although the four-page order of the trial court contains no express finding that the verdict was excessive, its overall tenor leads this court to believe that there was at least an implied finding to that effect. The trial court stated in its order that the size of the verdict would justify a belief of "mistreatment."

Plaintiffs' evidence showed that the improper mixture was obtained by plaintiff James Buus on Friday, November 16, at Stocker's Service Center, using his pickup truck which was equipped with a 135-gallon tank for transporting fuel. Buus picked up two loads on that date, one before noon and the second shortly thereafter. Most of the first load was put in one scraper and "a little bit" in the second scraper. The second load was put in the second scraper and in the bulldozer. During the course of the afternoon the operators of the three machines encountered difficulty with them. They were shut down that afternoon and on the following Monday, November 19, fuel was removed from all three machines.

Testing by plaintiffs' expert John Hill showed that the fuel from the first scraper contained 5.05 percent gasoline, the fuel from the second scraper contained 15.55 percent gasoline, and the fuel from the bulldozer contained 19.60 percent gasoline.

John Hill was the only witness whom plaintiffs sought to qualify as an expert on the effect upon a diesel engine of the introduction of a mixture of gasoline and fuel oil coupled with the operation of the machine for approximately four hours. Hill testified, on *direct* examination, that if a 19.60 percent mixture were to run in a diesel engine for up to four hours, "I cannot visualize very much of an effect on an engine—not in four hours. It would not do it any good but I don't see that it would do that much damage." The verdict itself was at the outer limit of the evidence.

Under the foregoing circumstances this court concludes that the order of the trial court, granting a new trial on all issues, should be affirmed. It is so ordered.

GREENE, P. J., and TITUS, J., concur.

