**Laura MORRIS, Appellant,**

v.

**Charles F. DUKER, Respondent.**

**No. 52257.**

Supreme Court of Missouri,
Division No. 1.

March 13, 1967.

Motion for Rehearing or to Transfer to Court
En Banc Denied
April 24, 1967.

As Modified on Court's Own Motion
April 24, 1967.

Thomas M. Sullivan, Edward L. Fitz-
gerald, Downey, Sullivan & McCormick,
Kansas City, for appellant.

Joseph A. Sherman, Barton Brown,
Deacy & Deacy, Kansas City, for respond-
ent.

HOUSER, Commissioner.

Laura Morris, a pedestrian, sued Charles
F. Duker, the driver of an automobile, for
$55,000 damages alleged to have been sus-
tained by plaintiff when she was struck
by defendant's automobile while walking
across a street in Kansas City. A trial
jury returned a verdict for defendant, and
plaintiff has appealed from the judgment
entered on the verdict.

Appellant's first point is that the court
erred in refusing to permit plaintiff on voir
dire to ask the members of the jury panel
whether they held policies of insurance in
State Farm Mutual Automobile Insurance
Company, which was interested in the out-
come of the trial. In chambers, out of the
hearing of the veniremen, counsel for plain-
tiff indicated that he intended to inquire
whether any members of the panel, or mem-
bers of their immediate families, were em-
ployed by or held policies with this insur-
ance company. Counsel for defendant ob-
jected on two grounds. First, it was ob-
jected that nothing would be done on behalf
of defendant to cause the name of the in-
surance company to be mentioned in evi-
dence in the presence of the jury and that
the defendant was sued for an amount "in
excess of any existing policy of insurance."
The court overruled this objection. Sec-
ond, defendant objected "to any inquiry
as to policy holders for the reason that the
State Farm Mutual is a non-assessable mu-
tual company; that the mere fact that a
juror may be a policy holder would not in
and of itself disqualify him as a juror or
give him any financial interest. The only
financial interest that he could have would
be the effect that this verdict would have
on his premium, and that would be of such
a small amount as to be insignificant, for
the reason that there are so many policies
of insurance issued by State Farm." The
court sustained the second objection. The
only question then asked of the panel with
regard to insurance was whether any of
the veniremen or any of the members of
their immediate families were either an of-
ficer in or employed by State Farm Mutual
Automobile Insurance Company. The
panel remained silent. There is nothing in
the record to show that any of the venire-
men, or any of the members of their fami-
lies, actually were officers of or employed
by State Farm Mutual, or that any of them
carried insurance with that company.

The extent to which counsel may
go in inquiring of veniremen with respect
to their connection with an insurance com-
pany interested in the outcome of a case on
trial is a matter resting within the sound
discretion of the trial judge. The court is
allowed a broad discretion in determining

the latitude of the inquiry respecting the qualifications of veniremen to sit as jurors. Eickmann v. St. Louis Pub. Serv. Co., Mo. Sup., 323 S.W.2d 802, 807. The action of the court in this respect will not be set aside unless there is a manifest abuse of discretion. Moore v. Middlewest Freightways, Inc., Mo.Sup., 266 S.W.2d 578, 585; Kendall v. Prudential Insurance Company of America, Mo.Sup., 327 S.W.2d 174; Bunch v. Crader, Mo.App., 369 S.W.2d 768 [4] and cases cited, fn. 4. The burden is on appellant to establish prejudicial error upon an appeal, Nash v. Plaza Electric, Inc., Mo.Sup., 363 S.W.2d 637, 641, and this rule applies to an order restricting the scope of voir dire examination.

Appellant cites Gooch v. Avsco, Incorporated, Mo.Sup., 340 S.W.2d 665; Aiken v. Clary, Mo.Sup., 396 S.W.2d 668; McCollum v. Shubert, Mo.App., 185 S.W.2d 48; Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538; Kaley v. Huntley, Mo.App., 88 S.W.2d 200, and Bunch v. Crader, supra. Gooch says that it is *proper* to ascertain what connection prospective jurors have with an insurance company interested in the defense, provided pertinent inquiries are made, and that the trial judge may reasonably circumscribe the inquiry "by limiting the number of questions and imposing other curbs on the nature of the examination." Aiken reversed a ruling prohibiting any and all inquiry of the panel with respect to an insurance company's interest on the mere basis of an affidavit of the president of the company that the company had no stockholders, officers or directors resident in Missouri and only one employee in this state, whose name did not appear on the list of prospective jurors. McCollum held that where the inquiry disclosed that 5 members of the panel held policies in a mutual company, plaintiff had a right to make an inquiry whether this fact would affect them one way or the other "in the decision of a case in which you thought they were interested or might be interested," because as policyholders in a mutual concern they were interested in the company as owners and substantially occupied the position of stockholders. Rytersky says that it is *proper* to ascertain whether a juror "carries a like policy in some company." Kaley holds that it is *not improper* to inquire whether any of the jurors or members of their families are policyholders or had any other connection with the insurance company interested in the outcome. Bunch upheld the action of the court in permitting inquiry whether members of the panel were policyholders, and considerable other interrogation with reference to the subject, on the basis that there was nothing to indicate bad faith on the part of counsel. The court points out, however, that absent special circumstances the better practice is to ascertain whether any member of the panel is interested by asking one general question.

None of these cases militates against our ruling that there was no error in restricting the inquiry to the question whether any panel member or member of his family was an officer or employee of the insurance company. It was a discretionary matter and in permitting the inquiry as to officers and employees but prohibiting it as to policyholders the court was not by that fact alone guilty of a manifest abuse of discretion. In making the objection defendant's counsel stated that State Farm is a nonassessable mutual company. This was not controverted at the trial by plaintiff's counsel. It has been held that the holders of nonassessable policies are not disqualified as a matter of law from acting as jurors in a case in which the issuing company has an interest in the litigation. Kendall v. Prudential Insurance Company of America, Mo.Sup., 327 S.W.2d 174. This was an action brought directly against Prudential on a life policy issued by that company. Four veniremen disclosed that they were Prudential policyholders. The failure of the trial court to sustain plaintiff's challenges for cause, based on this fact, was upheld. The opinion pointed out that "a challenge for cause is not required to be sustained as to every kind of policyholder under all circumstances. In view of modern

widespread use of all kinds of insurance, such a rule would be unreasonable at least as to those with nonassessable policies or those who do not participate in policy dividends. The view that holders of non-assessable policies are not disqualified as a matter of law was stated in Kanzenbach v. S. C. Johnson & Son, Inc., 273 Wis. 621, 79 N.W.2d 249. See also Mellinger v. Prudential Insurance Company of America, 322 Mich. 596, 34 N.W.2d 450." 327 S.W. 2d, l. c. 177, 178. In Kendall the plaintiff failed to make a sufficient showing that the veniremen were interested in the outcome of the case. The court said that any interest of any of the challenged veniremen was too minute and too remote to require the court to sustain a challenge for cause as to them.

Now in this Court plaintiff contends that State Farm is not a nonassessable company. This, however, is not the criterion. The question on this appeal is whether plaintiff was prejudiced by the refusal of the court to permit inquiry whether any member of the panel was a policyholder. The burden is on the appellant.

■ If the fact that a member of the venire was a policyholder rendered him ineligible as a matter of law to sit as a juror it would constitute an abuse of discretion to refuse to permit the inquiry, but it does not. In Swinger v. Bell, Mo.Sup., 373 S.W. 2d 30, 32, this Court held that "The fact alone of being a policyholder, however, does not disqualify * * *." And see McCollum, supra, 185 S.W.2d l. c. 50 [3].

■ If the inquiry had been allowed it would have been proper. McCollum, supra. The better practice would be to allow such an inquiry. If a venireman is a policyholder the plaintiff has a right to inquire whether in view of that fact he could try the case fairly. McCollum, supra. The refusal to permit inquiry whether any panel member was a policyholder, however, does not constitute an abuse of discretion requiring us to upset a verdict and judgment, in the ab-

sence of an allegation in the motion for new trial, and proof at the hearing, or an admission, that in fact one or more of the jurors empanelled was a policyholder, and showing that plaintiff was prejudiced by the ruling. There was no such allegation in the motion for new trial, and this fact was not admitted by defendant. The record does not show that evidence was taken on the motion for new trial, or that any of the jurors in fact were policyholders or that any of them had any interest in the outcome of the case, not even a minute or remote interest. No prejudicial error in this connection has been established under these circumstances.

Appellant's second point is that the court erred in giving Instruction No. 5 on contributory negligence, as follows:

"Your verdict must be for the defendant whether or not defendant was negligent if you believe:

"First, plaintiff either:

"failed to keep a careful lookout, or left a place of safety and walked into the immediate path of defendant's vehicle; and

"Second, plaintiff's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and

"Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

"The term 'negligence' as used with reference to plaintiff means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

The complaints are that No. 5 was not supported by and conflicted with all of the evidence; that it improperly imposed a duty on plaintiff to yield the right of way to defendant even after she had walked over half the distance across the roadway, and that it provided no standard for the jury to

decide what was the "immediate path" of defendant's vehicle.

Plaintiff, age 64, was walking eastwardly across Belleview, a north-south street, when she was struck by the front bumper and grill of defendant's automobile. Belleview is a one-way (southbound only) three-lane asphalt street, 42 feet wide at its intersection with Forty-Fourth Street, where the collision occurred. The accident occurred on the evening of November 19. It was dark. The streetlights and automobile lights were turned on. Plaintiff was familiar with the conditions at this intersection, having crossed the street there every night for a year and a half. She knew that Belleview was a through street, busy during the rush hour. Customarily she would wait at the curb for cars to come to a complete halt before starting across "because cars came by there pretty swift." There were no traffic lights or stop signs for southbound traffic at that intersection. Plaintiff, intending to walk across Belleview from west to east, looked to the north, toward Forty-Third Street. She saw two southbound automobiles approaching, one in the west lane and the other in the center lane. The two automobiles came to a stop next to each other. She saw no other traffic. The driver of the car in the west lane motioned for her to cross in front of him. She stepped off the west curb and proceeded eastwardly across Belleview in line with the sidewalk. There were no painted crosswalk lines. The driver of the second car then motioned for her to go on in front of him and she walked in front of the second car. Then she started into the third lane, "got along a little ways," when "a flash of light came across, and there was no way that [she] could get out of the way at all, and [she] knew that there was a car coming." She "saw the bright light" but did not know how close the car was to her. When struck plaintiff was "not far" from the east curb; she had walked 36 feet of the 42-foot street. She was walking "at a regular pace," a "normal gait," and was not running or walking fast.

She looked to her left (north) twice. The first time was when she was at the west curb. She did not again look to her left until the instance of the impact, at which time she looked up and saw the light of the car that struck her.

Defendant testified as follows: He had been traveling south on Belleview at 20–25 m. p. h., in the center lane. There were some slow moving automobiles just ahead of him, so he drove into the lane on his left (the east lane) just after he passed Forty-Third Street. As he approached Forty-Fourth Street he was traveling 30 m. p. h. There was an automobile traveling to his right and ahead of him. This car obstructed his view of plaintiff. He first saw plaintiff when she was "just coming in view in front of that car, just stepping out from in front of him." She was getting close to the line between the east lane and the center lane. Defendant immediately applied his brakes the second he saw plaintiff, and his tires skidded. She "appeared to just keep on walking" and she moved far enough to enter the east lane. His car stopped a couple of feet after he struck plaintiff. Considering the place plaintiff was in when defendant first saw her, there was room behind her for the car in the center lane to pass behind her.

A police corporal testified that defendant stated at the scene of the accident that he noticed the danger of an accident when his automobile was approximately 30 feet away; that he applied his brakes but could not stop in time to avoid the accident. He found "46 feet of overall skid" (i.e. not deducting the 10-foot wheelbase of the automobile).

Taking the speed of the automobile (30 m. p. h.), the distance plaintiff walked (36 feet), the time it took her to walk from the curb to the point where she was struck (estimated at 9–12 seconds), appellant calculates that defendant's automobile was more than 400 feet north of the point of impact when plaintiff left a place of safety on the west curb and began her walk across

Belleview. A city ordinance requires the driver of a vehicle to yield the right of way, slow down or stop if necessary to yield to a pedestrian crossing the roadway within a crosswalk when the pedestrian is on the "half" of the roadway on which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite "half" of the roadway as to be in danger, "but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

■ Arguing that there was no evidence that the automobile was so close that the driver could not yield, appellant asserts that there was no evidentiary basis for a submission that plaintiff left a place of safety and walked into the immediate path of the automobile. We are unable to agree. The ordinance speaks not only of the curb as a place of safety but also of an "other" place of safety. Defendant's testimony would justify a finding that plaintiff was in a place of safety between the line of traffic moving south in the center lane and that in the east lane, and that instead of remaining in that position until defendant's automobile passed she kept on walking into a position in front of his automobile, without looking out for herself, under such circumstances that the collision occurred notwithstanding plaintiff made an immediate application of the brakes upon seeing and observing her actions.

■ Nor did No. 5 impose upon plaintiff a duty to yield the right of way to defendant, after she had walked over half the distance across the roadway, as claimed. Plaintiff contends the basic premise of plaintiff's case is that when she first stepped into the street she had the right of way—"the right to the immediate use of the roadway"—but that No. 5 "told the jury that the Defendant driver had the right of way to operate, and to proceed in his 'immediate path,' and that the Plaintiff was negligent if she walked into his 'im-

mediate path.'" This contention fails. The rights and duties of pedestrian and vehicle driver under the city traffic code are correlative and not absolute. There is a duty of a vehicle driver to yield the right of way to a pedestrian lawfully crossing, and to exercise the utmost care and caution to avoid striking a pedestrian not lawfully crossing, and to slow down or stop if the pedestrian, crossing the roadway within a crosswalk when upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half as to be in danger. A pedestrian is prohibited from suddenly leaving the curb or other place of safety and walking or running into the path of a vehicle so close that it is impossible for the driver to yield. These duties are not arbitrarily and inflexibly imposed regardless of circumstances. Just because she had the right of way did not entitle plaintiff to walk into and across the east lane of traffic without looking out for her own safety and in total disregard of the approach of southbound traffic, including defendant's automobile. She was obliged to exercise her right of way with due regard to the exigencies of the situation, and if under No. 5 she left a place of safety at or near the line dividing the center and east lanes and walked into the immediate path of defendant's automobile, without looking, and in blind reliance upon her right of way and his duty to yield, she could properly be found guilty of contributory negligence barring her recovery.

■ In our judgment No. 5 prescribed a sufficiently definite standard by which the jury could judge what was the "immediate path" of defendant's vehicle. "Immediate" as used in this context means "direct," which is one of the many recognized definitions of the word. Webster's New International Dictionary, second edition, unabridged. The objection that No. 5 permitted a finding for defendant regardless of where defendant's automobile was when plaintiff left the curb, or of how far away it was when plaintiff entered the east lane,

is not well taken. The relative positions of pedestrian and automobile when plaintiff left the west curb are immaterial, because it was plaintiff's place of safety between the center and east lanes that was involved. It was not necessary for No. 5 to hypothesize the distance between plaintiff and defendant's automobile when she entered the east lane. It was sufficient to hypothesize that she walked from a place of safety into the immediate path of the vehicle and that this was negligence and that her negligence in this respect directly caused or contributed to cause her damage. Number 5 hypothesized the ultimate issue without evidentiary detail and is entirely sufficient.

Appellant's last point is that the court erred in giving Instruction No. 4, which read as follows:

"Your verdict must be for defendant if you do not believe that defendant was negligent as submitted in Instruction Number 2." The negligence submitted in verdict-directing Instruction No. 2 was that defendant "failed to yield the right of way."

The argument is that defendant's testimony conclusively establishes that he failed to yield the right of way; that he stated that he was passing other vehicles when he should have been yielding the right of way to plaintiff, who had already crossed over 80% of the roadway; that where a motorist fails to yield the right of way he must justify his violation, and absent such a showing is to be held negligent as a matter of law.

■ This point is without merit. Defendant had a right to a converse instruction of plaintiff's verdict-directing Instruction No. 2. Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95. And see Dell'Aria v. Bonfa, Mo.Sup., 307 S.W.2d 479. Defendant utilized MAI No. 29.02(2), verbatim, and acted entirely within his rights in so doing. The gist of defendant's testimony was that his view of plaintiff was obstructed by other moving traffic; that plaintiff left a place of safety and walked into the path of defendant's automobile when it was so close that it was impossible for him to yield, and under such circumstances the jury could properly find that defendant was not negligent in failing to yield the right of way to plaintiff.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.