Leita R. FRANTZ, Plaintiff-Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Respondent.

No. KCD 26978.

Missouri Court of Appeals, Kansas City District.

Aug. 4, 1975.

Stanley W. Baker, Roger D. Odneal, Morrison, Baker & Odneal, Raytown, for appellant.

Spencer J. Brown, Deacy & Deacy, Kansas City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

The plaintiff appeals from a judgment entered on a jury verdict for the defendant. The plaintiff's motion for new trial and notice of appeal were timely filed. In Count II of her third amended petition, the plaintiff-insured prayed for $10,000 damages against the defendant-insurer under an uninsured motorist clause of the plaintiff's automobile insurance policy. The plaintiff was injured as she attempted to cross a street behind a car which backed into her as it was leaving a parking space, knocking her down. At the close of the plaintiff's case, the plaintiff voluntarily dismissed Count I of her petition against co-defendant Maurice Righter, the uninsured driver of the car.

In the points relied on section of her brief, the plaintiff's single point is, "The court erred in giving Instruction No. 3 requested by defendant as there was no evidence before the jury to support a finding that a 'place of safety' existed or that plaintiff stepped into the 'immediate path of the station wagon,' and accordingly permitted the jury to speculate and impose its own standards in making their findings." However, in the argument portion of her brief, the plaintiff raises another point, to-wit: that the trial court erred in failing to include in Instruction No. 3, submitting contributory negligence, definitions of the terms, "place of safety" and "immediate path." Although the point is not properly raised under the points relied on section of the plaintiff's brief, and therefore not properly for appellate review, it will be considered ex gratia.

■ In reviewing the plaintiff's contention that the evidence is not sufficient to support the contributory negligence instruction, the evidence will be reviewed in the light most favorable to the verdict with all the inferences from the evidence drawn in favor of the verdict. *Blackburn v. Katz Drug Co.*, 520 S.W.2d 668 (Mo.App.1975). The evidence shows that at approximately 10:00 a. m., on January 9, 1970, the plaintiff was walking north on the west side of Walnut Street between 15th and 16th Streets in Kansas City, Missouri. At approximately 1532 Walnut Street, a driveway crosses the sidewalk. The plaintiff walked to the middle of the driveway and stopped. She stood there looking north to the intersection of 15th and Walnut Streets to see if the light controlling that intersection was permitting traffic to travel south on Walnut, because she was planning to cross Walnut Street to the east, where she had parked her car. The plaintiff testified that as she stood in the middle of the driveway on the sidewalk she was approximately one foot from the edge of the street. There was no curbing at the point where the driveway crossed the sidewalk. She also testified that she was

two feet from the rear of the car which eventually injured her. She was holding in her right hand a box containing a vacuum cleaner. The plaintiff says that as she stood in the driveway on the sidewalk looking north, she felt pressure against her right leg. Turning her head, she saw that the car which had been parallel parked in the space immediately south of the driveway entrance was backing up causing its rear bumper to push against the box. ". . . I tried to get out of the way but I couldn't fast enough, and it knocked me down." Her scream as the car knocked her down alerted Maurice Righter, the driver of the car, who stopped and pulled his car forward into its original parking position. He went to the rear of his car to see what had caused the screaming. The plaintiff was immediately taken to a hospital. Her leg was placed in a cast, and she remained in the hospital several days. Clinical therapy for her injured leg continued for several months. She testified that she has never regained the full use of her right leg.

Mr. Righter testified that he had parked his car immediately to the south of the driveway in question at approximately 9:30 on the morning of January 9, 1970. He testified that the driveway was approximately 7 to 8 feet wide. He said that there was no car parked in the parking space in the street immediately to the north of the driveway. He said he pulled his car into the parking space just south of the driveway without backing into it.

Mr. Righter said that immediately after he entered his car prior to leaving, he noticed a lady to the right front of his car walking north on the sidewalk carrying a box. He said that he then proceeded to start his car and fasten his seatbelt. Mr. Righter's station wagon had glass along both sides and the rear of the vehicle. He said that prior to backing his car he looked over his shoulder to the rear and to the side. He said he also looked in his rear view mirror. He did not see the plaintiff at the side or the rear of his car. He said that 45 seconds elapsed from the time he saw the woman carrying the box walking north on the sidewalk at the right front of his car until he put his car in motion towards the rear. He said that as he backed up he was generally looking to the rear, but that he never saw the plaintiff. The first time he noticed anything amiss was when he heard the plaintiff's scream. He said that he first heard her scream after he had backed the car two feet at approximately one-half mile per hour. When he heard the scream, he stopped his vehicle and immediately moved it forward to its original position. Mr. Righter said that he found the plaintiff lying in a semi-prone position to the right rear of his car with her head to the west, the sidewalk side. She was "half-in and half-out of the street." Mr. Righter testified that her legs were in the street and her buttocks were on the edge of the driveway. Mr. Righter said, "She was sitting where the curb should have been." Mr. Righter testified that he had backed his car straight; that he did not turn his wheel. Righter said that from the time he saw the woman at the right front of the car carrying the box until he saw the plaintiff lying at the right rear of his car he never saw anyone to the right side or to the rear of his car.

The plaintiff testified unequivocally that at no time did she attempt to step into the street behind the Righter car. However, Dr. Paul Meyer, the physician who treated plaintiff's injury on the day that it occurred, read in deposition testimony the notes that he made about plaintiff's injury from the statements which she gave to him about the accident. The report read, "The patient was struck and knocked down by a car moving slowly backwards as she attempted to pass behind it this morning while working." Later in the deposition, Dr. Meyer said, "The patient was going across the street when the accident happened."

Officer Carl Jackman investigated the accident. At trial, he read that part of his police report which indicated how Mrs.

Frantz described the accident to him. The report read, "Did not want to go to crosswalk to cross street to her parked car. Mrs. Frantz stated that before stepping in street she looked north to be sure no cars were coming. Did not realize No. 1 parked car was backing from parked position on her right, was struck in right leg."

The defendant also introduced into evidence Paragraph 1 of a petition for damages filed by the plaintiff in this case in July, 1970. It read as follows:

"PETITION FOR DAMAGES, COUNT I, Paragraph 1, Plaintiff states that on or about the 9th day of January, 1970, she was a pedestrian crossing Walnut Street from the west side of the street to the east side of the street, at 1532 Walnut Street, a public street in Kansas City, Missouri; that defendant was operating a 1969 Rambler, backing the said vehicle north on Walnut Street at said time and place."

Also, the plaintiff's testimony that she was standing about a foot from the street when she was hit is inconsistent with Righter's testimony that he found her with her legs half in the street, and sitting where the curb would have been. However, this inconsistency must be resolved in favor of the defendant. All the plaintiff's evidence must be disregarded unless it aids the defendant's case. *Burk v. Missouri Power & Light Co.,* 420 S.W.2d 274 (Mo.1967); *Burks v. Leap,* 413 S.W.2d 258 (Mo.1967).

An appellate court may not overturn a verdict if there is substantial evidence to support the verdict. "When factual issues, supported by substantial evidence, are submitted to the jury and correct instructions are given advising the jury of the facts essential to their verdict, it is not the function of an appellate court to disagree with the jury's views as to what are the true facts." *Lansford v. S. W. Lime Co.,* 266 S.W.2d 564, 568 (Mo.1954); *Higgins v. Terminal R.R. Ass'n of St. Louis,* 362 Mo. 264, 241 S.W.2d 380, 384 (Mo.1951). The testimony of Dr. Meyers that the plaintiff

had told him she was going across the street when the accident occurred, the testimony of Officer Jackman that the plaintiff had told him that before stepping into the street she had looked north to be sure no cars were coming, the statement in the plaintiff's July, 1970, petition, that she was "a pedestrian crossing Walnut Street" when the accident happened, Maurice Righter's undisputed testimony that no one was directly behind his car immediately prior to the time that he put his car in motion, the evidence that the plaintiff was on the sidewalk less than 45 seconds prior to the time Maurice Righter moved his car, Righter's testimony that the plaintiff's legs were in the street after the accident, and the favorable inferences from that evidence substantially support the verdict and the finding that the plaintiff stepped off the sidewalk and into the immediate path of the Righter car.

Plaintiff's second point under her argument on appeal is that the court in the instructions should have defined to the jury the terms "place of safety" and "immediate path." However, in *Morris v. Duker,* 414 S.W.2d 77, 81 (Mo.1967), a substantially similar instruction using those terms was approved. In *Duker,* supra, the plaintiff was two-thirds of the way across a three-lane, one-way street after the first two lanes of cars had stopped for her when she stepped into the third lane and was struck by the defendant's car. The jury in *Duker,* supra, had before it evidence of a city ordinance effective at the time of the accident which stated, in part, " 'but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.' " The plaintiff in the instant case attempts to distinguish the *Duker* case using the following reasoning. "The entire ordinance . . ., in *Duker,* tends to explain the relative duties of motorists and pedestrians and would be of considerable assistance to the jury in determining the meaning of the language used in

such instruction. Here, the jury is left without any guide or explanation of the terms 'place of safety' and 'immediate path.'" However, that portion of the ordinance in *Duker*, supra, which states that the curb is a place of safety could not have been of substantial aid to the jury in their determination of what was a place of safety because the plaintiff in *Duker*, supra, did not step off the curb into the immediate path of the car which injured her; she was two lanes away from the curb when she stepped into the path of the car that struck her in the third lane. The *Duker* court said, "The relative positions of pedestrian and automobile when plaintiff left the west curb are immaterial, because it was plaintiff's place of safety between the center and east lanes that was involved."

The plaintiff's complaint that the instruction failed to define the term "immediate path" of the car is also answered by *Duker*. The *Duker* instruction similar to the instant one read, "First, plaintiff either: failed to keep a careful lookout, or left a place of safety and walked into the immediate path of defendant's vehicle; . . ." The *Duker* court said, "In our judgment No. 5 prescribed a sufficiently definite standard by which the jury could judge what was the 'immediate path' of defendant's vehicle. 'Immediate' as used in this context means 'direct,' which is one of the many recognized definitions of the word. Webster's New International Dictionary, second edition, unabridged." Also, in *Duker*, supra, the term "immediate path" was not defined in the ordinance.

 More importantly, it seems clear that "place of safety" and "immediate path" are both terms of common usage easily understandable to the jury under these facts. The evidence is undisputed that immediately prior to the accident the plaintiff in the instant case was standing on the sidewalk. The evidence is also clear, based on Maurice Righter's testimony, that Mr. Righter backed his car two feet in a straight line at one-half mile per hour while it was on the street. With this evidence,

the jury could have easily determined that the sidewalk was a place of safety and also it could have determined the immediate path of the Righter car. The holding of the *Duker* court is that "immediate" means "direct." It needs no further definition on the facts of this case. Because both "place of safety" and "immediate path" are terms of common knowledge, because the terms are not calculated nor likely to confuse the jury on the facts of the instant case, and because the plaintiff never offered her own instructions defining these terms, the trial court did not err. *State v. Day,* 506 S.W.2d 497 (Mo.App.1974).

Judgment affirmed.

All concur.